FARIS, Respondent, v. MOORE, Appellant

(26 N. W.2d 130)

(File No. 8887. Opinion filed February 18, 1947.)
Rehearing Denied April 18, 1947.

**Rice & Rice** and **Carl W. Miller,** all of Flandreau, for Appellant.

**J. H. Lammers,** of Madison, for Respondent.

RUDOLPH, J. In this action plaintiff seeks to prevent defendant from changing the natural course of certain ravine or draw the result of which, plaintiff claims, casts excessive water on his premises. The trial court granted plaintiff the relief he asked, and defendant has appealed.

Plaintiff is the owner of the East Half of Section 17, Township 108, Range 49, Moody County; defendant is the owner of the Northwest Quarter of Section 16. A township highway runs north and south between these two tracts of land. In 1908 there was constructed along the west line of the land now owned by defendant a railroad grade. The railroad was never built but the grade has remained. This grade is about four feet high and runs parallel to the high-

way. On the quarter section south of defendant's land the railroad grade has been obliterated by cultivation. A natural draw or ravine commences several miles southwest of defendant's land. This ravine runs northeast across the southeast quarter of Section 17, owned by plaintiff, then across the highway and into the southwest quarter of Section 16. The ravine enters defendant's land at the southwest corner. The natural course of this ravine after entering defendant's land is toward the northeast. Plaintiff's farm buildings are on the southwest forty acres of his land, and the draw or ravine goes northeast and near these buildings. Since the construction of the railroad grade the water has followed a depression caused by excavating for the grade along the east side of the grade, but at times a part of the water follows the natural course toward the northeast and towards defendant's buildings. In the fall of 1944 defendant removed the south eight or ten rods of the railroad grade and used the dirt therefrom to dam the draw or ravine as it entered his farm; he also threw a dam across the ravine toward the northeast and near his buildings. In the dam across the ravine at the point where it entered his farm he placed a culvert, four feet in diameter, but this was placed 60 feet west of the natural drain. The result of these changes made by defendant was to change the natural flow of the water in the ravine so that it flowed down the west side of the railroad grade about seventy rods, then across the highway to the west and on the land of the plaintiff. This was the condition when plaintiff commenced this action in June 1945. In the fall of 1945 the township officers placed a culvert in the highway at the point where the water which defendant had diverted to the west side of the railroad grade ran across the highway to plaintiff's land, and with the consent of the defendant the railroad grade was opened directly east of the point where the culvert was placed. The trial court made no finding with reference to these acts occurring subsequent to the time the action was commenced, and confined the relief granted to the acts which occurred prior to the commencement of this action. The court by its judgment restrained the defendant from changing the flow of the surface water in the draw or ravine

from the east side to the west side of the railroad grade, ordered the removal of the dams in the ravine and the restoration of the railroad grade.

Appellant contends that the evidence discloses a low place on his land at the point where the culvert was placed in the highway and the railroad grade was opened; that this low place extends across the highway and into respondent's land. Appellant further contends that this low place is the natural receptacle for all of the water flowing through the ravine or draw, whether it flows in its natural course to the northeast after entering his premises, whether it follows the east side of the grade in a large portion as it did after the excavation for the railroad grade, or whether it flows down the west side of the railroad grade as it did after the diversion. Based upon this premise, appellant contends that with the installation of the culvert and the opening of the railroad grade at this low point a natural condition has simply been restored and the water has reached its natural basin.

Some of the witnesses did testify that the water from this draw reached this low spot as contended by appellant, but they were testifying with reference to the condition after the construction of the railroad grade when all are agreed that the water generally followed down the east side of the grade to this particular low spot. However, other witnessess testified that with excessive rainfall part would go down the east side of the grade, and the balance would follow the general course of the draw to the northeast, as stated by the witness Branson, "* * * some of it goes around the house, down through the hogyard and right straight east." The plaintiff also denied that all the water running in this draw would reach this particular low spot.

In the light of the above testimony, we are unable to accept appellant's premise that all the water running in this draw reached the particular low spot as he contends.

■■ Under the provisions of SDC 61.1031 it is permissible to drain in the course of natural drainage. Johnson v. Metropolitan Life Ins. Co., S. D., 22 N. W.2d 737; La Fleur v. Kolda, S. D., 22 N. W.2d 741. However, defendant did not purport to drain in the course of the natural drainage

when he constructed his dams across the ravine. He diverted the water from its natural course to an unnatural course and eventually upon the lands of the plaintiff. We think it clear that defendant had no right to construct the dams across the draw and divert the water in the manner disclosed by this record. In Quinn v. Chicago, M. & St. P. R. Co., 23 S. D. 126, 120 N. W. 884, 22 L. R. A., N. S., 789, this court approved a rule as follows:

" 'A railway company, or other proprietor of land, cannot throw an embankment across such a ravine as above described, into and through which the surface water of a large scope of country is accustomed to flow, without providing adequate means for the usual flowage of water seeking its natural outlet.' "

The record fairly establishes that prior to the construction of the railroad grade the water in the draw flowed northeast across defendant's land. After the construction of the grade the water flowed north along the excavation for the grade on its east side where it has flowed for more than thirty-five years and established a well-defined couse. The construction of the grade had apparently caused a change in the natural conditions but so long as the grade remained this change did not affect the plaintiff. Nor will the plaintiff be affected by the removal of the grade so long as the water continues to flow down the east side thereof. We, therefore, construe that portion of the judgment requiring the defendant to restore the grade as requiring only such restoration as will prevent an unnatural flow of the water on plaintiff's land. We may concede that respondent cannot acquire by prescription the right to be protected against the natural flow of this water by the railroad grade which has been there almost forty years. But appellant was not required to restore the grade because respondent had acquired a prescriptive right to its protection against the natural flow of the ravine. As we view this record the railroad grade had caused an unnatural condition to exist, it had changed the natural flow of the water which was to the northeast prior to the construction, to a line due north along the east side of the grade. The removal of the grade simply enhanced this unnatural condition to

the damage and injury of the plaintiff. The restoration of the grade protects plaintiff, not against the natural flow of the water, but against the unnatural flow caused by the construction and maintenance of this grade over a period of years.

In view of the fact that the trial court made no finding and granted no relief with respect to the removal of the grade at the point where the culvert was placed in the highway, we, of course, express no opinion thereon.

The judgment appealed from is affirmed.

All the Judges concur.

POLLEY, J., not sitting.