[No. 31637. Department One. September 6, 1951.]

CLYDE TURNER et al., Appellants, v. THE CITY OF SPOKANE et al., Respondents.[1]

[1]Reported in 235 P. (2d) 300.

*Geo. W. Young* and *Jack R. Dean,* for appellants.

*G. M. Ferris, B. A. Farley,* and *Paul F. Schiffner,* for respondent city of Spokane.

*Witherspoon, Witherspoon & Kelley,* for respondents Clifton & Applegate.

SCHWELLENBACH, C. J.—This is an appeal from a judgment dismissing, with prejudice, an action for injunctive relief.

The plaintiffs are residents and owners of property known as "Five Mile Prairie," located on a plateau near the city of Spokane. They brought this action on behalf of themselves and others similarly situated to restrain the defendants from the operation of a rock quarry, the operation of a rock crushing plant, or the use of explosives on property acquired by the city for that purpose. Plaintiffs alleged that they raise poultry, farm animals and livestock, and that it will be impossible to breed or raise such poultry or livestock because of the noise, dust and confusion resulting from the quarry operations; that the blasting will change the water courses and their wells will become polluted or dry up; that the blasting and operation of the rock crushing plant will endanger the comfort, health, repose and safety of the plaintiffs; and that the market value of their property will be radically reduced, thus damaging their property without due process of law.

The city answered, denying the allegations of damage, and alleging affirmatively that the property purchased by

it for ten thousand dollars, after an exhaustive search, was the only suitable site available for its purpose; that, at the time of its acquisition, the property was listed as unclassified; and that, on May 11, 1948, the city applied for, and was granted, a permit by the county planning commission to operate the rock crushing plant. This was denied by plaintiffs.

The property owned by plaintiffs is used for various purposes. Some of the plaintiffs have lots for sale; one raises rabbits; another poultry; another horses; and another operates greenhouses. Several nice homes have been built by plaintiffs, ranging in value from five thousand dollars to twenty-five thousand dollars. Most of the plaintiffs have children and testified that they were fearful that the blasting and operation of the crusher would be dangerous to the children. They all have wells and their testimony was general that the blasting would injure their wells and either destroy or contaminate their water supply. There was testimony that the dust from the operations would interfere with their health or ruin their shrubbery. They testified that the dust, noise and shock from the blasting would interfere with their repose and well-being, and that the operations would reduce the value of their property materially.

The site of the crushing plant is one hundred twenty-five feet below the plateau. The city's testimony ·was that the dust from the operations is heavy and will not rise more than fifty feet above the crusher, and that the prevailing winds will carry the dust in the opposite direction from the homes of the plaintiffs. The property was acquired for the purpose of crushing one hundred thousand cubic yards of basalt rock to be used by the city of Spokane in its street paving program. The city's testimony was to the effect that basalt rock is much more efficient and economical for asphalt paving and that a great saving has been made with regard to repairs to the paving because of its use.

The contracting firm intends to use a sequence type of blasting. For example, four rows of holes will be drilled and loaded with dynamite. The row closest to the face of the cliff will be shot first, the second row next, and so on.

Each shot would be less than a second apart. It was testified that this method of blasting tends to put the pressure from blasting outward, rather than back into the cliff, thus lessening the chance of damage to property located to the rear of the blasting. The wells are from one thousand four hundred feet to four thousand feet distant from the rock crusher site. The city's witnesses testified that the operations would have no effect on the value of plaintiffs' property.

■■ On sharply disputed evidence, the trial court found that the danger of dust, noise and confusion, the danger to the wells and the loss or pollution of water and the danger and annoyance to plaintiffs' comfort, health, repose and safety due to the blasting and operation of the rock crushing plant were not of sufficient imminence to warrant the granting of injunctive relief at the time of the hearing. We have thoroughly and carefully examined the record and from such examination are not able to say that the evidence preponderates against such finding. While it is true that a court of equity may enjoin a threatened or anticipated nuisance, public or private, where it clearly appears that a nuisance will necessarily result from the contemplated act or thing which it is sought to enjoin, yet the court ought not to interfere where the injury apprehended is of a character to justify conflicting opinions as to whether it will in fact ever be realized. Annotation, 7 A. L. R. 749, *et seq.*

In its judgment, the trial court decreed that the city require any contractor performing quarrying and rock crushing operations to obtain and keep in full force and effect property damage insurance in the amount of twenty-five thousand dollars for the payment of all lawful claims for damage to property occasioned by the operations.

One assignment of error is that the trial court erred in refusing to hold that the establishment of the proposed rock crushing plant and quarry would be a violation of the zoning ordinances of the county. The master zone resolution, adopted by the county commissioners August 4, 1943, and amended at various times, provided for different zone dis-

tricts, among which are "agricultural" and "unclassified." The property in question, including both the property of appellants on Five Mile Prairie and the property purchased by the city, was unclassified. As such, there was no prohibition against the operation of a rock quarry, provided a permit therefor was issued by the county planning commission. No notice of a hearing on the issuance of such a permit was necessary. On the other hand, the operation of a rock quarry is not permitted in an agricultural district except by special permit entered by the county planning commission after notice and public hearing.

We set out, in chronological order, the events pertinent to this particular claim of error. The city had been endeavoring, for some time, to obtain a suitable site for the operation of a quarry and rock crushing plant and it was known to appellants that this particular site was under consideration. April 12, 1948, the site was purchased by the city for a consideration of ten thousand dollars. A petition of appellants, dated April 28, 1948, was presented to the county planning commission to rezone the property in question (including the city's property) from an unclassified district to an agricultural district. May 11, 1948, city applied to county planning commission for permission to occupy its property as a rock crusher site. May 11, 1948, permit issued to city by planning commission to occupy premises as a rock crusher plant. May 11, 1948, notice of hearing on petition to rezone as agricultural zone, to be heard May 19th. June 23, 1948, at adjourned hearing, recommendation by planning commission to county commissioners that petition to rezone be granted. June 28, 1948, notice of hearing to be held July 13, 1948, on petition. July 13, 1948, resolution by county commissioners zoning property as agricultural district. No protest was made by petitioners, at any of the hearings, because of the permit which had been granted to the city. No protest was made at any time by the city against inclusion of its property in the agricultural district. Both sides appeared to be sparring for position.

Nevertheless, the city does have a permit to occupy its property as a rock crushing plant. The permit contains the following:

"Accessory Buildings *Powder House, Garage, shop bunkers*
Estimated Cost *$100,000.00*
Certificate of Occupancy Issued for *Rock Crusher Plant*"

▇ At the time the permit was issued the property was zoned as unclassified and its issuance by the county planning commission was regular and valid. The action of the county commissioners in later classifying all of the property involved as "agricultural" did not take from the city the right which had theretofore been granted it to occupy its property for a rock crushing plant. *State ex rel. Grimmer v. Spokane,* 64 Wash. 388, 116 Pac. 878; Annotation, 40 A. L. R. 928. We express no opinion as to the right of appellants, under the zoning ordinance, to petition the county planning commission for a revocation of the city's permit.

▇ This does not mean, however, that the city may not be enjoined from its operation later upon a proper showing. In *Park v. Stolzheise,* 24 Wn. (2d) 781, 167 P. (2d) 412, we said:

"While every person has a right to do with his property as he sees fit, that right can be exercised only so long as he does not, and in such a manner as will not, invade the rights of his neighbor unreasonably, as judged by the ordinary standards of life, according to the notions and habits of people of ordinary sensibilities. The maxim, *sic utere tuo ut alienum non laedas,* expresses the well-established doctrine of the law. That principle has been further developed in this state by statutes relating to nuisances. Rem. Rev. Stat., § 9914 [P.P.C. § 81-23], declares:

" 'Nuisance consists in unlawfully doing an act, or omitting to perform a duty, which act or omission either annoys, injures or endangers the comfort, repose, health or safety of others, . . . or in any way renders other persons insecure in life, or in the use of property.' "

In the present case, the trial court was justified, upon the showing made, in denying injunctive relief. The court indicated that its decision would not prevent appellants

from applying for an injunction after, for example, the first blast, if they show that they have been damaged, or are in real danger of suffering damage. With this we are in accord.

The judgment is affirmed.

BEALS, HILL, DONWORTH, and FINLEY, JJ., concur.

October 29, 1951. Petition for rehearing denied.

