Ralph E. LEE and Carolyn B. Lee,
Plaintiffs and Appellants,

v.

Mark G. SCHULTZ, Defendant
and Appellee.

No. 14564.

Supreme Court of South Dakota.

Considered on Briefs Jan. 7, 1985.

Decided Sept. 4, 1985.

Rehearing Denied Oct. 15, 1985.

T.R. Pardy of Mumford, Protsch & Pardy, Howard, for plaintiffs and appellants.

William J. Ellingson, Flandreau, for defendant and appellee.

MORGAN, Justice.

The trial court's application of the doctrine of res judicata resulted in the dismissal of appellants' complaint, by which Ralph E. Lee and Carolyn B. Lee (Lees) sought abatement of a nuisance resulting from respondent Mark G. Schultz' (Schultz) drainage of sloughs on his land onto the land of Lees. Schultz affirmatively pled res judicata based on an earlier adjudication, wherein Ralph Lee individually (Ralph) sought an injunction against maintenance of the drainage ditch, which relief was denied. Lees appeal and we reverse and remand.

The facts before the trial court, as stated in Lees' complaint, are essentially: Schultz, lessee of the NW ¼ of Section 20 [1] is draining a 44-acre slough into a 30-acre slough on his own land, the NE ¼ of Section 19, and into another 5-acre slough on that quarter and thence it flows in a northerly direction onto Lees' land situated in the SE ¼ and the N ½ of Section 18, where it has accumulated and formed a 90-acre slough and rendered such acreage untillable. It is further alleged that the 30-acre slough, above referred to, was a land-locked slough, having no natural drainage, but as a result of an artificial cut or ditch of from four to eight feet, it drained into the 5-acre slough. Lees sought a declaration that the drainage constituted a nuisance, the abatement thereof, and damages for the loss of crops.

The prior adjudication which Schultz relies on was commenced approximately two years previous to the commencement of this action. Ralph's complaint in that action alleged essentially that Schultz had diverted a 32-acre watershed, which had existed for at least thirty years, so as to enable the water to go onto Ralph's land, thereby causing irreparable damage. The complaint further alleged that Schultz' action violated SDCL 46–5–1 and 46–5–46, and that it would be extremely difficult to ascertain compensation to afford adequate relief; i.e., no other plain, speedy, and adequate remedy at law was available. Ralph sought a permanent injunction under SDCL 21–8–14. After a trial to the court, the trial judge entered findings of fact and conclusions of law and a judgment denying Ralph's request for injunction. The trial court's findings of fact included the following:

3. On Defendant's land are two sloughs, a large one in the Southeast corner and a smaller one in the middle of the north side. The small slough naturally drains across the road onto Plaintiff's land. The large slough was a land-locked basin with no natural outlet until in January, 1981, Defendant, for purposes of better husbandry, by means of an artificial ditch constructed wholly upon his own land, drained the large slough into the smaller slough which, when full, would drain across the road onto Plaintiff's land.

4. Drainage from Defendant's land across the road north onto Plaintiff's land follow a natural course and such water draining in that direction is either absorbed by the field as it crosses Plaintiff's land, or if the flow is heavy or the ground is frozen, flows to the northeast where it drains. Drainage across Plaintiff's land follows a natural water course.

There was no evidence that water would gather and form a new slough or otherwise unreasonably damage Plaintiff's land. Plaintiff did not appeal that decision.

In its memorandum opinion in this action, the trial court noted that in the first action Ralph alleged creation of an unnatural drainage that would cast water on his land to his detriment. It went on to state:

Plaintiff now claims the drainage ditch constructed by defendant has cast water on his land to his detriment. The court has already ruled the defendant could construct and maintain the ditch. There is no allegation defendant has done anything else. 'Res judicata' prevents the relitigation of an issue of ultimate fact already determined. In the instant case, the court in the prior decision allowed the defendant to construct a ditch, the ultimate issue has already been determined. The defendant, having the right to construct a ditch, cannot now be held liable for any detriment that may have been caused.

Obviously, the trial judge did not fool Mother Nature when he said the runoff water would drain and not collect. It did not drain and it did collect in a bigger slough than Schultz' original slough. That being the case, the issue before us is

---

1. All land lies in Township 107 North, Range 50 West, Moody County, South Dakota.

whether his first decision is, indeed, res judicata in the second cause of action.

*Keith v. Willers Truck Service,* 64 S.D. 274, 266 N.W. 256 (1936), appears to summarize the rules on res judicata to that date.[2] The decision stated, as general principles:

> First, a final judgment or decree of a court of competent jurisdiction upon the merits is a bar to any future action between the same parties or their privies upon the same cause of action so long as it remains unreversed; and, second, a point which was actually and directly in issue in a former action and was there judicially passed upon and determined by a domestic court of competent jurisdiction cannot be drawn in question in any future action between the same parties or their privies ·whether the cause of action in the two actions be identical or different.

64 S.D. at 276, 266 N.W. at 257–58 (citations omitted). "Point," as referred to above, is defined as a distinct proposition or question of law arising or propounded in a case. Black's Law Dictionary 1040 (5th Ed.1979).

The next major decision pertinent to our discussion here was *Carr v. Preslar,* 73 S.D. 610, 616, 47 N.W.2d 497, 500 (1951), wherein we held: "[T]he facts which establish or give rise to the right of action a party seeks to enforce constitutes his cause of action." (Citations omitted.)

Lees strongly urge us that res judicata is not applicable to this case because the facts which give rise to the right to relief now are changed. As noted above, the trial court did find in the first cause of action that "there was no evidence that water would gather and form a new slough or otherwise unreasonably damage plaintiff's land." Although Schultz' motion alleges that the facts as alleged in the second complaint are identical to the facts alleged and adjudicated in the prior action, that does not appear to be accurate, for Lees now allege serious damage and detriment to their property as a result of the drainage. There was no evidence before the trial court to dispute that claim, it being decided on summary judgment, nor did the trial court in its memorandum opinion dispute that fact. Rather, the trial court held that it had already ruled that Schultz could construct and maintain the ditch, that Lees had not alleged that Schultz had done "anything else," that the prior decision on construction of the ditch was the ultimate issue and res judicata applies. Further, it added that Schultz, having the right to construct the ditch, cannot be held liable for any detriment that may have been caused.

This case is unique in that it appears to be the first time that this court has been called upon to consider the doctrine of res judicata, as applied to actions seeking injunctive relief. First of all, we of course recognize that injunction is not a cause of action but rather it is a form of relief that is available only under certain circumstances.

Both cases here were grounded in nuisance. In the first complaint, Ralph alleged that Schultz had diverted a watershed in violation of statutes, causing damage to Ralph's land for which it would be difficult to ascertain compensation. In the second cause of action, Lees alleged that Schultz had diverted the watershed, draining it onto their land in such amount as to materially damage it. In the first cause of action the trial court found no evidence that water would gather and form a new slough or otherwise damage Ralph's land and found Schultz had a right to drain surface waters as he had done. In the second cause of action, although the trial court acknowledged the claim of detriment, it found that it had already ruled on the ultimate issue, the right to construct a ditch and, therefore, Schultz could not be held liable for any detriment that may have been caused.

---

**2.** For the latest summary *see Black Hills Jewelry Mfg. v. Felco Jewel Ind.,* 336 N.W.2d 153 (S.D. 1983).

In the first cause of action, the trial court properly denied injunctive relief because Ralph failed to show damages. Schultz, as the owner of the dominant land lying in the upper portion of the natural drainage water course, has a legal easement right, for the purpose of better husbandry, by means of artificial ditches, to drain surface water as he has done which would accumulate in the larger slough on his land. To do so, he had the right to construct an uncovered ditch as he did. The decision is within the purview of SDCL 46A-10-31 and the "civil law rule" as set out in *Thompson v. Andrews*, 39 S.D. 477, 491-92, 165 N.W. 9, 14 (1917):

> We hold the rule to be that the owner of dominant agricultural lands, situate and lying in the upper portion of a natural drainage water course or water basin has, in the course of and for the purposes of better husbandry, a legal easement right, by means of artificial drains or ditches constructed wholly upon his own land, to accelerate and hasten the flow of waters that are surface waters under the rule herein laid down, and to cast the same into and upon a servient estate lying lower down in the same natural drainage water course, at that point where nature, by means of ravines or depressions, has indicated that such surface waters should find a natural outlet[.]

But the right of easement granted by that rule has limitations:

> [E]ven though the waters of the basin in question are surface waters and there is a legal burden upon respondents' lands to receive such waters through the natural water course crossing such lands, such burden and the accompanying easement is one that is reasonable, or, as above noted, one consonant with good neighborliness. Under the claim of an easement appellant could not rightfully turn upon the servient estate large volumes of water, out of all proportion to the capacity of the water course, and thus cause serious damage to respondents.

39 S.D. at 489, 165 N.W. at 13. If and when the dominant land owner exceeds those limits, an entirely different fact situation exists. He is then maintaining a nuisance and, upon the showing of those distinguishing facts, the doctrine of res judicata must fall.

In *Turner v. City of Spokane*, 39 Wash.2d 332, 235 P.2d 300 (1951), the Supreme Court of the State of Washington anticipated the raising of res judicata in a case where plaintiff property owners sought to enjoin the City of Spokane and others from operation of a rock quarry, the operation of a rock crushing plant, or the use of explosives on property acquired by the city for that purpose. The trial court had dismissed the action upon the grounds that the dangers of dust, noise, and confusion; the danger to wells and pollution of water; and the annoyance to plaintiffs' comfort, health, repose, and safety, were not of sufficient imminence to warrant granting injunctive relief at the time of the hearing. The Washington Supreme Court upheld this action, commenting:

> While it is true that a court of equity may enjoin a threatened or anticipated nuisance, public or private, where it clearly appears that a nuisance will necessarily result in the contemplated act or thing which it is sought to enjoin, yet the court ought not to interfere, where the injury apprehended is of a character to justify conflicting opinions as to whether it will in fact ever be realized.

235 P.2d at 301-02 (citation omitted). The Washington Court went on, however, to point out: "This does not mean, however, that the city may not be enjoined from its operation later upon a proper showing." *Id.* at 302. The Court further expressed itself to be in accord with the trial court's indication "that its decision would not prevent [plaintiffs] from applying for an injunction after, for example, the first blast, if they show that they have been damaged, or are in real danger of suffering damage." *Id.* at 303.

In a similar vein, the Eighth Circuit Court of Appeals in *Klaber v. Lakenan*, 64

F.2d 86 (1933), discussed the refusal of the trial court to grant an injunction against the obstruction of view to and from a store building, where plaintiff could show no damage but argued that it was anticipated that the building would be replaced with an office building, where the obstruction would result in damage. The Court held that "the case is determined upon the facts as to the situation existing at the time the trial court made its findings," and that affirmance of the trial court's decision would "be without prejudice to the bringing of another suit whenever circumstances so change that plaintiff is able to show substantial injury." *Id.* at 92. As the Court summarized, "[i]t would be most unreasonable to enjoin [a nuisance] not resulting in present substantial injury because of the mere possibility that circumstances may so change as to bring about, at a later time, such injury." *Id.* at 92–93.

■ We think that the Lees are in the same position as the plaintiffs in the foregoing cases. At the time of commencement of the first action, there was simply no damage shown resulting from the ditching. If Ralph had appealed the trial court's first decision, it would undoubtedly have resulted in an affirmance. But, now, circumstances have changed. Granted the trial court had confirmed Schultz' right to maintain the ditch as an act of good husbandry under the civil law rule. As noted, that rule has limitations and Lees now claim that Schultz has exceeded them. The first blast has now occurred, a considerable portion of Lees land is inundated. They are entitled to seek injunctive relief.

We reverse the decision of the trial court and remand with instructions to proceed in accordance with this opinion.

WOLLMAN, J., and TAPKEN, Circuit Judge, concur.

HENDERSON, J., concurs specially.

FOSHEIM, C.J., dissents.

TAPKEN, Circuit Judge, sitting for WUEST, Circuit Judge, acting as a Supreme Court Justice, disqualified.

HENDERSON, Justice (specially concurring).

Although both litigants pose the legal issues in this case as pertaining to the doctrine of res judicata, the law concerning the drainage of surface waters is also treated by this opinion. Our opinion in *Gross v. Connecticut Mutual Life Ins. Co.*, 361 N.W.2d 259 (S.D.1985), was filed on January 9, 1985, some three months after the briefs were filed herein. Obviously, these parties were unaware of the holding in *Gross,* as *Gross* was not handed down when the briefs were filed herein. *Gross* thoroughly reviewed the "civil law rule" cited by the majority opinion in *Thompson v. Andrews,* 165 N.W. 9, and at least one subsequent decision citing *Thompson,* namely *Johnson v. Metropolitan Life Ins. Co.,* 71 S.D. 155, 22 N.W.2d 737 (1946). *Gross,* as in the instant case, not only involved surface waters but inceptually an injunction and later damages. In *Gross,* a feedlot dam was cut which caused flooding. Here, we have the apparent cutting away of a ridge creating an artificial ditch.

That injunctive relief may be an appropriate remedy for injury suffered by unlawful flooding, *see Tisher v. Jarrett,* 75 S.D. 503, 68 N.W.2d 592 (1955) and *Faris v. Moore,* 71 S.D. 482, 26 N.W.2d 130 (1947). Such an injunctive grant rests in the discretion of the trial court. *Hofer v. Bridgewater Ind. Sch. Dist.,* 76 S.D. 483, 81 N.W.2d 300 (1957). It is vital and prerequisite to such relief that an inadequate remedy at law be established. *Hein v. Marts,* 295 N.W.2d 167 (S.D.1980); *Anderson v. Kennedy,* 264 N.W.2d 714 (S.D.1978). To obtain an injunction, the right to the relief must be established with reasonable certainty. *Hofer,* 81 N.W.2d 300. An old case, but still good law, was cited and its language approved in *Gross,* 361 N.W.2d at 265, to wit: "An injunction should only be granted where, under the facts proven, it appears reasonably certain that the granting thereof will protect the party seeking it from some injury that would result in his

damage." *Alsager v. Peterson,* 31 S.D. 452, 456, 141 N.W. 391, 392 (1913).

I concur with the majority opinion's assessment of the res judicata issue and particularly its citation to *Black Hills Jewelry Mfg. v. Felco Jewel Ind.,* 336 N.W.2d 153 (S.D.1983), which, when applied to the facts of this case, would sustain the majority opinion's viewpoint.

FOSHEIM, Chief Justice (dissenting).

I dissent. Lees' present action is *res judicata.*

The doctrine of *res judicata* prevents relitigation of an issue actually litigated or *which could have been* properly raised in determining a proper action. *Black Hills Jewelry Manufacturing Co. v. Felco Jewelry Industries, Inc.,* 336 N.W.2d 153, 157 (S.D.1983). The key question is whether the wrong sought to be redressed is the same in both actions. *Id.*

Here it is clear that the wrong sought to be remedied in both of Lees' actions is the same: they want Schultz stopped from draining water from his land onto their land. Following the first action, the trial court found "there was no evidence that water would gather and form a new slough or otherwise unreasonably damage [the Lees'] land." Though Mother Nature has perhaps now proved the finding to be wrong, Schultz is doing nothing more now than at the time of the first action. The Lees' have had their day in court. That judgment is conclusive. *See Cundy v. Weber,* 68 S.D. 214, 221, 300 N.W. 17, 20 (S.D.1941); *see also Raschke v. DeGraff,* 81 S.D. 291, 295–96, 134 N.W.2d 294, 297 (1965).