2004 UT App 118

**David NIPPER, individually, and asserting claims assigned to him by Jim Ludwig and Ruth Ludwig, Plaintiff and Appellant,**

v.

**John H. DOUGLAS, Defendant and Appellee.**

No. 20021074–CA.

Court of Appeals of Utah.

April 15, 2004.

Brian W. Steffensen, Salt Lake City, for Appellant.

Preston S. Howell, West Valley City, for Appellee.

. Before BENCH, Associate P.J., GREENWOOD, and JACKSON, JJ.

## OPINION

JACKSON, Judge:

¶ 1 David Nipper (Nipper) appeals an order from the district court granting summary judgment to John H. Douglas (Douglas). We affirm.

## BACKGROUND

¶ 2 In 1998, Nipper made arrangements with "Remember When Classic and Performance Cars" (Remember When), a consignment sales car lot, for the consignment of a 1957 Chevrolet that he owned. Douglas was at the time the general partner of Remember When. After Remember When sold the car to Jim and Ruth Ludwig (the Ludwigs), Remember When's payment to Nipper failed to clear the bank. Accordingly, Nipper filed suit in April 1999 against Douglas, Remember When, and others. Assigned to Judge J. Dennis Frederick, Nipper's complaint (the Frederick action) listed five causes of action: (1) Breach of Contract; (2) Theft; (3) Civil Conspiracy; (4) Declaratory Relief; and (5) Breach of Covenant of Good Faith and Fair Dealing. In subsequent motions filed with the court, Nipper specifically referenced a theory of relief against Douglas based upon the alter ego doctrine. On 25 June 2001, Judge Frederick entered an order of summary judgment granting Nipper relief against Remember When. On 17 December 2001, however, Judge Frederick granted summary judgment to Douglas on the issue of whether Douglas could be held personally liable for Nipper's loss. Nipper filed multiple motions asking Judge Frederick to reconsider the summary judgment grant in favor of Douglas. All of these motions were denied.

¶ 3 In September 1999, the Ludwigs filed suit against Nipper, seeking to obtain title to the 1957 Chevrolet at the heart of this dispute. In this suit, the Ludwigs also raised various claims against Douglas and Remember When. In the course of settling the litigation with the Ludwigs, Nipper allegedly acquired the Ludwigs' claims against Douglas and Remember When.

¶ 4 In May 2001, Nipper filed another suit related to the dispute over the 1957 Chevrolet. This case was assigned to Judge Frank G. Noel (the Noel action). As in the Frederick action, Nipper named Douglas, Remember When, and various other parties as defendants. The statement of the facts in the Noel action closely paralleled that which had been included in the complaint filed in the Frederick action, with word-for-word duplication throughout large portions of the complaint. As in the Frederick action, Nipper again asked for relief based upon Breach of Contract, Theft (with virtually identical wording to the Theft cause of action filed in the Frederick action), and Civil Conspiracy. By Nipper's own admissions, there were only two substantive differences between the complaint filed in the Frederick action and the complaint in the Noel action. First, in the Noel action, Nipper added causes of action based on the RICO statute and on the alter ego doctrine; second, in the Noel action, Nipper argued that he was not only asserting claims on his own behalf, but also on behalf of the Ludwigs.

¶ 5 On 29 March 2002, Judge Noel granted Douglas's motion for summary judgment on the ground that Nipper's complaint was barred by the doctrine of res judicata. On 9 April 2002, Judge Noel also granted Douglas's motions for attorney fees and sanctions under rule 11 of the Utah Rules of Civil Procedure.

¶ 6 Subsequent to the grant of summary judgment, Nipper allegedly learned that Douglas and various other co-defendants had pleaded guilty to criminal charges arising out of their management of Remember When. Nipper motioned the court to (i) withdraw its grant of summary judgment for Douglas and (ii) grant his motion for summary judgment based on the res judicata effects supposedly created by the criminal convictions. As sole evidentiary support for this motion, Nipper attached an internet printout from a local newspaper describing the convictions. Judge

Noel denied the motion to reconsider. Nipper now appeals.

## ISSUES FOR REVIEW

¶ 7 The precise scope of Nipper's appeal is somewhat unclear. In his Statement of the Issues for Review, Nipper lists six different issues as the subject of his appeal. In his Table of Contents, however, Nipper directs our attention to eight different issues.[1] A comparison of the two different listings of issues sheds little light on this problem. Though one of the items listed in his Table of Contents, "Elements of Res Judicata," is clearly meant to act as legal background, that still leaves seven argumentative captions in a Table of Contents that is supposed to illuminate the six legal arguments listed in the Statement of the Issues for Review. Further, it appears from our review that several of these arguments are not independent arguments in and of themselves, but are instead more accurately described as sub-arguments modifying a larger point.

¶ 8 As best as we can determine, Nipper has three main arguments on appeal. First, Nipper alleges that Judge Noel erred in determining that the grant of summary judgment in the Frederick action acted as res judicata on his claims before Judge Noel. Second, Nipper alleges that Judge Noel erred in denying his request to reconsider Judge Noel's own grant of summary judgment based on the internet newspaper printout showing Douglas's guilty plea in a separate criminal proceeding. Third, Nipper argues that Judge Noel erred in granting rule 11 sanctions below.

## ANALYSIS

### I. The Res Judicata Effect of the Frederick Action

¶ 9 Nipper's principal argument with respect to Judge Noel's res judicata ruling is that the Frederick dismissal had no preclusive effect on the Noel action because (i) the

---

1. Indeed, the degree to which Nipper's Table of Contents fulfills its own purpose is itself an open question. Nipper's Table of Contents contains no numbering, lettering, or structural designations of any kind. In the absence of any organizational markings, it is entirely unclear as to which headings are meant to act as main arguments acting as independent grounds for relief, and which are instead meant to serve as subsidiary arguments supporting a broader point.

Noel action was based on two additional grounds for relief, and (ii) in addition to his own rights, Nipper was allegedly asserting the rights of the Ludwigs in the Noel action. This attempted circumvention of the principle of res judicata, however, is legally unsustainable.

¶ 10 Contrary to Nipper's repeated assertions, his addition of two new causes of action to a lawsuit that is entirely predicated on the same set of operative facts and the same alleged injury does not void the otherwise preclusive effects of the prior judgment. "Not only does claim preclusion prevent relitigation of a claim, it also prevents the litigation of claims that could and should have been litigated in the prior action, but were not." *Office of Recovery Servs. v. V.G.P.*, 845 P.2d 944, 946 (Utah Ct.App.1992). If an issue in a subsequent suit " 'between the same parties or their privies is shown to have been determined in a former one, the question is res judicata . . ., although the actions are based on different grounds, or tried on different theories, or are instituted for different purposes and seek different relief.' " *Berry v. Berry*, 738 P.2d 246, 248 (Utah Ct.App.1987) (citation omitted).

[H]aving been defeated on the merits in one action, a plaintiff sometimes attempts another action seeking the same or approximately the same relief but adducing a different substantive law premise or ground. This does not constitute the presentation of a new claim when the new premise or ground is related to the same

transaction or series of transactions, and accordingly the second action should be held barred.

*Id.* (citation omitted); *see also Sevy v. Security Title Co. of S. Utah*, 902 P.2d 629, 633 (Utah 1995) ("It is well settled that issue preclusion prevents relitigation of the same issue even if the claims for relief in the two actions are different.").

¶ 11 Here, "the issues are the same, the facts are the same, and the evidence is the same as in the previous litigation." *Berry*, 738 P.2d at 248. The mere addition of a RICO claim and an alter ego claim to an otherwise straightforward regurgitation of the prior complaint simply does not negate the preclusive effects of the prior dismissal.[2]

¶ 12 Nipper also argues that res judicata should not apply because Judge Frederick's order was not final. In his brief, however, Nipper has failed to either (i) include any citation or legal analysis specifically discussing the contours of the finality requirement, or (ii) specifically explain why the order of summary judgment entered by Judge Frederick was not final. "As we have repeatedly noted, we are not a depository in which [a party] may dump the burden of argument and research." *Smith v. Four Corners Mental Health Ctr., Inc.*, 2003 UT 23,¶ 46, 70 P.3d 904 (quotations and citations omitted) (alteration in original). Accordingly, we decline to address this argument.[3]

¶ 13 A final note on Nipper's res judicata argument is in order here. In spite

---

2. In oral arguments before Judge Noel on Nipper's Motion for Reconsideration, Nipper's counsel stated that it is his "practice" to file similar actions in multiple courts and to then attempt to consolidate them into one action. In explaining why this was his usual course of action, Nipper's counsel stated that this "practice" was a defensive measure designed to avoid the denial of a motion to amend. Thus, the following colloquy occurred:

    THE COURT: [C]ouldn't [the RICO claim] have been raised in Frederick's case?

    MR. STEFFENSEN: Sure, but it wasn't, and that doesn't mean it's precluded, your Honor. We either make a motion to amend or file a new case. You can do either one.... [I]t's frustrating because we'll make motions to amend and they'll get denied and we have to file new lawsuits. . . . And so our practice has been if we're going to file the lawsuit, toll the statute and then if there needs to be a motion

to consolidate, let there be a motion to consolidate.

To clear up counsel's apparent confusion, we note here that such a practice may indeed have some validity in situations where a plaintiff has multiple causes of action against the same defendant that are factually and legally unrelated. However, as discussed above, where the different causes of action are based on the same set of operative facts, it is clear that principles of preclusion demand that the claims be litigated in a single setting. *See Berry v. Berry*, 738 P.2d 246, 248 (Utah Ct.App.1987). Here, Nipper's claim in the Noel action was so inextricably tied to Nipper's claim in the Frederick action that it relied on *word-for-word* recitations of large portions of the statement of facts and causes of action that had been pleaded in the prior case. As such, claim preclusion clearly applied.

3. Because of our determination that res judicata barred the Noel action, we need not reach Nip-

of Nipper's inability to point to any legal authority that would support his contention that res judicata does not bar his attempted relitigation of the Frederick action before Judge Noel, Nipper has asserted in his reply brief that we should grant him relief based on his ill-argued assertions that "justice" should be done. What Nipper obviously fails to recognize, however, is that our judicial system is designed to provide justice for plaintiffs and defendants alike. In our adversarial civil system, procedural safeguards must exist in order to ensure that a plaintiff's zeal for recompense is not allowed to dwarf a defendant's right to fairly present a case for non-liability. The doctrine of res judicata is one of the chief mechanisms by which this equilibrium is maintained, thereby "relieving parties of the cost and vexation of multiple lawsuits" and "preventing inconsistent decisions." *V.G.P.*, 845 P.2d at 946. Thus, "[t]he 'doctrine of res judicata is not a mere matter of practice or procedure inherited from a more technical time than ours. It is a rule of fundamental and substantial justice, "of public policy and of private peace," which should be cordially regarded and enforced by the courts.' " *Id.* (quoting *Hart Steel Co. v. Railroad Supply Co.*, 244 U.S. 294, 299, 37 S.Ct. 506, 508, 61 L.Ed. 1148 (1917)).

¶ 14 In the Frederick action, Nipper had the opportunity to fully and fairly litigate his claims before an impartial tribunal. After having failed to obtain relief against Douglas in that action, Nipper can file a direct appeal of any adverse rulings as a continuation of his judicial pursuit of justice. Under our rules, however, Nipper was not entitled to essentially refile the same complaint before a different judge in the hopes of achieving a different result. In our view, allowing Nipper to pursue such a course of action would itself be manifestly unjust.

## II. The Res Judicata Effect of Douglas's Criminal Conviction

¶ 15 Nipper next argues that Judge Noel erred in refusing to grant his own motion for summary judgment. This motion was based on his argument that Douglas's alleged criminal conviction on charges that were allegedly related to the civil claims brought by Nipper should act as res judicata in the civil action. As proof of the criminal conviction, Nipper attached to his motion below an internet printout of a newspaper article.

¶ 16 Once again, Nipper has failed to properly brief the issue. Among the briefing failures with respect to this issue are (i) a failure to provide any legal citation or legal analysis as to the legal relationship, if any, between the crimes for which Douglas was allegedly convicted and the civil causes of action at the heart of this dispute and (ii) a failure to provide any legal citation or legal analysis discussing the preclusive effects of criminal convictions on otherwise related civil actions. Given Nipper's complete failure to provide us with any meaningful support for his argument, we decline to address its merits. *See Smith*, 2003 UT 23 at ¶ 46, 70 P.3d 904.

## III. Rule 11 Sanctions

¶ 17 Nipper also argues that the trial court's grant of attorney fees and sanctions to Douglas should be reversed. Nipper has not provided any citation to the record, however, that would show where the grant of attorney fees was actually entered. Indeed, Nipper did not even mention this grant of attorney fees in his Statement of the Facts or Statement of the Case. Further, Nipper has not provided us with any authority setting forth the applicable law regarding the trial court's ability to award attorney fees or sanctions, nor has he provided us with any authority setting forth the standards by which we can overturn such an award. As such, we decline to address the merits of Nipper's argument. *See* Utah R.App. P. 24(j).[4]

---

per's arguments regarding the preclusive effects of collateral estoppel.

**4.** We have considered the other issues raised by Nipper in his brief and conclude that they are without merit. Accordingly, we decline to address them. *See State v. Carter*, 776 P.2d 886, 888 (Utah 1989) (holding that an appellate court "need not analyze and address in writing each and every argument").

### IV. Appellate Sanctions

¶ 18 Finally, Douglas argues that an award of attorney fees associated with this appeal is appropriate. We agree.

¶ 19 Utah Rule of Appellate Procedure 24(j) states that briefs "must be concise, presented with accuracy, logically arranged with proper headings and free from burdensome, irrelevant, immaterial or scandalous matters. Briefs which are not in compliance may be disregarded or stricken ... sua sponte by the court, and the court may assess attorney fees against the offending lawyer." As discussed above, Nipper's brief was extraordinarily deficient in terms of its briefing quality. In addition to being bereft of any organizational coherency or structure, the arguments were for the most part unsupported by any specific legal citation or analysis. Indeed, there are only three citations of any note in the argument section of Nipper's brief. In the first, Nipper has merely quoted from a Utah case that sets forth the general res judicata analysis. This quotation, however, is not clarified with any reference to any cases that discuss the particular portions of the res judicata analysis that were actually the subject of Nipper's appeal. *See Smith,* 2003 UT 23 at ¶ 46, 70 P.3d 904 ("A brief is inadequate when it merely contains bald citations to authority without development of that authority and reasoned analysis based on that authority." (Quotations, citations, and alterations omitted.)). In the second, Nipper has included an extended, three-page long, single-spaced quotation from another Utah case that also discusses the res judicata analysis. Though the inclusion of a three-page long quotation may not be per se "burdensome" under rule 24(j), a three-page long quotation that is not supported by a detailed follow-up analysis is in fact "burdensome." Use of such lengthy, unanalyzed quotations is also at odds with rule 24(j)'s conciseness mandate.

¶ 20 Rule 24(j) allows us to direct that the award of attorney fees be paid by the party's attorney. Here, our award of attorney fees is predicated on the failure of Nipper's counsel to adequately brief the issues raised on appeal. Insofar as the technical and legal adequacy of a brief is a matter for which a party's attorney is uniquely responsible, we think it plain that the fault for the filing of this improperly briefed appeal must lie with Nipper's attorney. Accordingly, we grant Douglas's request for an award of attorney fees incurred in this appeal, and direct that these fees be paid to Douglas by Nipper's attorney.

### CONCLUSION

¶ 21 We affirm the decision of the trial court that Nipper's claims in the Noel action were barred by the doctrine of res judicata. Due to deficient briefing, we decline to review Nipper's claims relating to his own motion for summary judgment and the imposition of sanctions below. We also conclude that Douglas is entitled to attorney fees incurred in this appeal. Accordingly, we remand this case to the trial court for the sole purpose of determining the amount of attorney fees incurred in this appeal, and direct that those attorney fees be paid by Nipper's attorney.

¶ 22 WE CONCUR: RUSSELL W. BENCH, Associate Presiding Judge and PAMELA T. GREENWOOD, Judge.