**2014 UT App 247**

# THE UTAH COURT OF APPEALS

CANDACE PETERSON,
Petitioner and Appellee,

*v.*

JOHN ANDREW ARMSTRONG,
Respondent and Appellant.

Memorandum Decision
No. 20130039-CA
Filed October 17, 2014

Fourth District Court, Provo Department
The Honorable Fred D. Howard
No. 120401455

Brent D. Young and Dallas B. Young, Attorneys
for Appellant

Gregory N. Skabelund, Attorney for Appellee

SENIOR JUDGE PAMELA T. GREENWOOD authored this
Memorandum Decision, in which SENIOR JUDGE RUSSELL W.
BENCH concurred.[1] JUDGE JOHN A. PEARCE dissented,
with opinion.

GREENWOOD, Senior Judge:

¶1 John Andrew Armstrong (Husband) appeals from the
Fourth District Court's order entering a civil stalking injunction
against him and in favor of Candace Peterson (Grandmother).

---

1. The Honorable Pamela T. Greenwood and Russell W. Bench,
Senior Judges, sat by special assignment as authorized by law. *See
generally* Utah R. Jud. Admin. 11-201(6).

Husband argues that principles of res judicata bar the court from issuing the injunction. We agree and reverse.

¶2     Grandmother is Husband's former mother-in-law.[2] Now divorced from one another, Husband and Grandmother's daughter (Mother) have two children, and Grandmother often cares for the children when they are in Mother's custody. Grandmother and Mother reside in Cache County, and Husband resides in Utah County.

¶3     In April 2009, Grandmother and Husband were involved in a situation that resulted in Grandmother calling the police (the 2009 Incident). It began when Husband came to Grandmother's home to pick up the children and parked his car on the private land in front of the home. Husband called Grandmother and she informed him that Mother and the children were not there. Grandmother then requested that Husband leave her property. Husband refused. After Grandmother called for help, the police responded and escorted Husband from the premises.

¶4     In April 2012, the parties were engaged in another dispute involving the police (the 2012 Incident). As with the 2009 Incident, this episode began when Husband came to pick up the children from Grandmother. After some confusion about where Husband and Grandmother would meet to exchange the children,[3] Husband followed Grandmother and the children in his vehicle as they drove from one location to another. While driving, Husband

---

2. We recite the facts as found by the Fourth District Court. *See Bott v. Osburn*, 2011 UT App 139, ¶ 2 n.1, 257 P.3d 1022.

3. In November 2011, the Fourth District Court issued a civil stalking injunction against Grandmother that restrained her contact with Husband but allowed curbside exchanges. Some of the confusion during the 2012 Incident resulted from Grandmother's inability to contact Husband herself and the fact that Husband did not want to lure Grandmother into violating the injunction.

contacted the police, who instructed him to stop following Grandmother. Nevertheless, Husband continued to follow Grandmother for approximately twenty minutes. Eventually, when Grandmother reached her destination, the children walked to Husband's car and into Husband's custody without further incident.

¶5 Approximately four months later, on August 24, 2012, Grandmother filed a request for a civil stalking injunction against Husband in the First District Court (the First District Court Case). In her petition, Grandmother described the 2009 Incident and the 2012 Incident, as well as two other alleged contacts, as stalking events. Without holding a hearing,[4] the First District Court issued an order denying Grandmother's request for an ex parte civil stalking injunction. The First District Court's order indicated that the events described by Grandmother were not stalking because "the last episode was April 27, 2012 [and Grandmother] is seeking a stalking injunction 4 months later so no immediate fear or alleged threats." The court's order continued, "[Grandmother] may consider other legal proceedings to restrain [Husband's] alleged conduct."

¶6 Seventeen days later, Grandmother filed a second request for a civil stalking injunction, this time in the Fourth District Court (the Fourth District Court Case).[5] Grandmother's petition again described the 2009 Incident and the 2012 Incident as stalking

---

4. An ex parte civil stalking injunction may be issued by the court without a hearing or notice. Utah Code Ann. § 77-3a-101(5)(a) (LexisNexis 2012).

5. "[I]f there is a prior court order concerning the same conduct," the Utah Code requires the petition to include the name of the court in which the prior order was rendered. *Id*. § 77-3a-101(4)(d). Grandmother's Fourth District petition disclosed the November 2011 stalking injunction against her but did not disclose the First District Court Case.

events. Grandmother also alleged six other stalking incidents in support of her petition. The Fourth District Court issued an ex parte temporary civil stalking injunction that was served on Husband. Within ten days, Husband requested a hearing. Husband also filed a motion to dismiss the stalking injunction, arguing that Grandmother's petition was not made in good faith because the First District Court had denied a similar petition, which relied upon the same incidents as the petition filed in the Fourth District Court. Grandmother opposed the motion, acknowledging that the 2009 Incident and the 2012 Incident had been raised in the petition filed in the First District Court but arguing that the First District Court made no decision on the merits of the request.[6]

¶7     The Fourth District Court held an evidentiary hearing on November 9, 2012. At the end of the hearing, the court denied Husband's motion to dismiss, declaring that the denial of Grandmother's application for an ex parte stalking injunction in the First District Court did not constitute an adjudicatory proceeding that rose to the level of res judicata or collateral estoppel. After hearing the evidence, the Fourth District Court found "reason to believe" that the stalking had occurred. The court made findings regarding the 2009 Incident and the 2012 Incident, and determined that both episodes constituted stalking. The court did not address the six other incidents that Grandmother alleged in her petition.[7] The Fourth District Court granted the stalking injunction against Husband. Husband appeals.

---

6. Husband's motion argued that Grandmother's petition relied on the same incidents, but he did not use the terms res judicata, claim preclusion, or issue preclusion. Grandmother's memorandum argued that claim preclusion was the relevant issue.

7. The district court referred to an August 2009 incident (one of the six other alleged incidents) during which Husband threatened Grandmother and her husband in front of Husband's home. Unlike the 2009 Incident and the 2012 Incident, however, the court's order did not state that the August 2009 incident was stalking.

¶8    Husband challenges the Fourth District Court's grant of the stalking injunction, arguing that the First District Court's dismissal of Grandmother's earlier petition barred the Fourth District Court from issuing an injunction predicated upon the same alleged stalking events. Whether res judicata bars an action presents a question of law. *Macris & Assocs., Inc. v. Neways, Inc.*, 2000 UT 93, ¶ 17, 16 P.3d 1214. We review the district court's decision on a question of law for correctness. *Id*. Husband also argues that the Fourth District Court should have granted his request for attorney fees and that he should be awarded fees incurred on appeal.

¶9    We begin by outlining the statutory procedures for obtaining a civil stalking injunction. Under Utah law, a person who believes he or she is the victim of stalking "may file a verified written petition for a civil stalking injunction against the alleged stalker with the district court in the district in which the petitioner or respondent resides or in which any of the events occurred." Utah Code Ann. § 77-3a-101(2) (LexisNexis 2012).[8] The court may issue an ex parte civil stalking injunction if it "determines that there is *reason to believe* that an offense of stalking has occurred." *Id*. § 77-3a-101(5)(a) (emphasis added). The ex parte injunction must be served on the respondent, and if the respondent requests an evidentiary hearing within ten days of service, the court shall hold a hearing, after which the court may modify, revoke, or continue the injunction. *Id*. § 77-3a-101(6)–(7). For the court to enter a permanent injunction, "[t]he burden is on the petitioner to show by

---

8. The Administrative Office of the Courts is required to provide forms and assistance for persons filing ex parte stalking injunctions, *see* Utah Code Ann. § 77-3a-101(3) (LexisNexis 2012), and the relatively low proof standard threshold allows some flexibility in granting the same, *cf. Wilker v. Wilker*, 630 N.W.2d 590, 595 (Iowa 2001) ("Out of necessity domestic abuse procedures are routinely instigated upon a pro se petition and consequently, . . . some leeway must be accorded from precision draftsmanship." (omission in original) (citation and internal quotation marks omitted)).

a *preponderance of the evidence* that stalking of the petitioner by the respondent has occurred." *Id*. § 77-3a-101(7) (emphasis added). For purposes of the statute governing civil stalking injunctions,

> [a] person is guilty of stalking who intentionally or knowingly engages in a course of conduct directed at a specific person and knows or should know that the course of conduct would cause a reasonable person: (a) to fear for the person's own safety or the safety of a third person; or (b) to suffer other emotional distress.

*Id.* § 76-5-106.5(2).

¶10    Husband argues that res judicata barred the Fourth District Court from issuing a civil stalking injunction based upon the same two events as were alleged in Grandmother's unsuccessful petition filed in the First District Court. Res judicata refers to "the overall doctrine of the preclusive effects to be given to judgments." *Moss v. Parr Waddoups Brown Gee & Loveless*, 2012 UT 42, ¶ 20, 285 P.3d 1157 (citation and internal quotation marks omitted). There are two branches of res judicata: claim preclusion and issue preclusion. *Id.* "Claim preclusion corresponds to causes of action; issue preclusion corresponds to the facts and issues underlying causes of action." *Id.* (citation and internal quotation marks omitted).

¶11    Claim preclusion "bars a party from prosecuting in a subsequent action a claim that has been fully litigated previously." *State v. Sommerville*, 2013 UT App 40, ¶ 30, 297 P.3d 665 (citation and internal quotation marks omitted). A prior judgment has a preclusive effect when a later lawsuit "is entirely predicated on the same set of operative facts and the same alleged injury." *Nipper v. Douglas*, 2004 UT App 118, ¶ 10, 90 P.3d 649. In other words, claim preclusion applies when "the issues are the same, the facts are the same, and the evidence is the same as in the previous litigation." *Id.* ¶ 11 (citation and internal quotation marks omitted). Claim preclusion applies when three elements are satisfied:

> (1) both suits must involve the same parties or their privies, (2) the claim that is alleged to be barred must have been presented in the first suit or be one that could and should have been raised in the first action, and (3) the first suit must have resulted in a final judgment on the merits.

*Moss*, 2012 UT 42, ¶ 21 (citation and internal quotation marks omitted). The third element is relevant to both claim preclusion and issue preclusion because "both . . . require that the first suit must have resulted in a final judgment on the merits."[9] *Sommerville*, 2013 UT App 40, ¶ 31 (citation and internal quotation marks omitted). In this case, Husband and Grandmother agree that the first two elements of claim preclusion are satisfied. Thus, we focus our analysis on the third element of claim preclusion—whether the action in the First District Court resulted in a final judgment on the merits.

---

9. The four elements of issue preclusion are

> (i) the party against whom issue preclusion is asserted was a party to or in privity with a party to the prior adjudication; (ii) the issue decided in the prior adjudication was identical to the one presented in the instant action; (iii) the issue in the first action was completely, fully, and fairly litigated; and (iv) the first suit resulted in a final judgment on the merits.

*Moss v. Parr Waddoups Brown Gee & Loveless*, 2012 UT 42, ¶ 23, 285 P.3d 1157 (citation and internal quotation marks omitted). Our supreme court has stated, "The *minimum* reach of issue preclusion beyond precise repetition of the first action is to prevent relitigation by mere introduction of cumulative evidence bearing on a simple historical fact that has once been decided." *Harline v. Barker*, 912 P.2d 433, 443 (Utah 1996) (citation and internal quotation marks omitted).

¶12    Husband argues that the denial of the First District Court ex parte petition for a civil stalking injunction barred the matter from going forward in a different district court and ended the controversy between the parties as to the allegations in the first petition. Husband contends that the First District Court's denial of Grandmother's ex parte petition was a final judgment on the merits because the court determined that Grandmother had not met her burden to show that the offense of stalking had occurred. Husband further argues that "[i]f the evidence presented cannot satisfy the [reason to believe] standard in the absence of any adversarial proceedings [in the First District Court], such a finding is necessarily a finding that the evidence cannot satisfy the preponderance of the evidence standard at an adversarial hearing." Thus, according to Husband, the First District Court's determination that Grandmother did not meet the "reason to believe" standard should be binding and preclude the Fourth District Court from later determining that Grandmother had shown by a preponderance of the evidence that stalking had occurred.[10]

¶13    In contrast, Grandmother argues that the First District Court's denial of her first petition did not constitute a final judgment on the merits because Husband did not make an appearance. Grandmother further contends that the First District Court's denial of her first petition was not a judgment on the merits because the court stated in its order that she "may consider other

---

10. Husband also argues that the Fourth District Court applied the wrong standard of proof—the reason to believe standard—in issuing the civil stalking injunction after the evidentiary hearing. That argument appears to have merit because the lesser reason to believe standard applies to the issuance of an ex parte injunction only. *See* Utah Code Ann. § 77-3a-101(5)(a), (6)(a), (7) (LexisNexis 2012). However, that distinction, while important, is not relevant to our analysis, because our focus is on the applicability of claim preclusion as to the ex parte order, not the permanent injunction after notice and a hearing.

legal proceedings to restrain [Husband's] alleged conduct." According to Grandmother, this language meant that the First District Court's "decision declin[ed] to reach the merits based on [the] availability of an alternative remedy."

¶14   "A judgment is upon the merits when it amounts to a declaration of the law as to the respective rights and duties of the parties based on . . . facts and evidence upon which the rights of recovery depend, irrespective of formal, technical, or dilatory objections or contentions." *Sommerville*, 2013 UT App 40, ¶ 32 (omission in original) (citation and internal quotation marks omitted).

> To be on the merits, a judgment does not have to proceed to trial. Rather, a judgment on the merits may be made at any stage of the litigation, so long as . . . [the judgment rendered is] based upon a proper application of the relevant law to the facts of the case.

*Id*. (alteration and omission in original) (citation and internal quotation marks omitted). Furthermore, "[a] judgment is on the merits if it completely disposes of an underlying cause of action, or determines that plaintiff has no cause of action." *Dennis v. Vasquez*, 2003 UT App 168, ¶ 8, 72 P.3d 135 (emphasis omitted) (citation and internal quotation marks omitted).[11]

---

11. "'[O]n the merits' is a term of art that means that a judgment is rendered only after a court has evaluated the relevant evidence and the parties' substantive arguments." *State v. Sommerville*, 2013 UT App 40, ¶ 32, 297 P.3d 665 (citation and internal quotation marks omitted) (concluding that a voluntary dismissal of charges did not involve the justice court's application of the relevant law to the facts of the case); *see also In re D.A.*, 2009 UT 83, ¶ 37, 222 P.3d 1172 (indicating that a matter is not adjudicated on the merits when the court's decision involves "matters of form rather than

(continued...)

¶15 The parties have pointed us to little case law in this area, and we have not located any Utah appellate court decisions involving the application of res judicata in the context of a civil stalking injunction. However, case law from other jurisdictions indicates that claim preclusion may be applied when a second civil stalking petition is filed following the denial of a similar petition. *See, e.g.,* *Tortorello v. Tortorello*, 153 P.3d 1117, 1122–24 (Haw. 2007) (affirming the application of res judicata because "the claim decided in Petition I is identical with the one presented in Petition II," and concluding that the intermediate court of appeals did not err in holding that res judicata applies to "protective order cases filed by the same petitioner against the same respondent where the second case is based on events that occurred, and that the petitioner knew about, prior to the filing of the first petition" (citation and internal quotation marks omitted)). The Ohio Court of Appeals applied claim preclusion in *Bumgardner v. Bumgardner*, No. CA2004-07-172, 2005 WL 1545790 (Ohio Ct. App. July 5, 2005). There, the domestic relations commissioner denied the petitioner's first petition for a civil protection order due to the lack of evidence. *Id.* at *1. The petitioner nevertheless filed a second petition, which alleged some facts concerning events that occurred subsequent to the dismissal of her first petition and reiterated the allegations made in support of her first petition. *Id.* After the commissioner denied the second petition based on claim preclusion, the petitioner appealed. *Id*. The *Bumgardner* court ultimately affirmed the dismissal of the petitioner's second petition. *Id*. at *3. The court reasoned that the petitioner failed to present evidence that the respondent placed her in fear of harm and that claim preclusion applied because the petitioner's fear of the respondent was "solely based on the events alleged in [the petitioner's] first petition." *Id*. at *2.

---

11. (...continued)
considerations of substance and legal rights" (citation and internal quotation marks omitted)).

¶16   Decisions from other courts indicate that claim preclusion is not appropriately applied when the second petition involves allegations of stalking events that occurred after the first petition was dismissed. *See White v. Bain*, 2008 SD 52, ¶ 21, 752 N.W.2d 203 (per curiam) ("Because of [the respondent's] subsequent acts [of harassment] . . . we hold that res judicata did not bar the second action or the trial court from considering [the evidence presented in the first action] as *part* of the basis for determining that stalking took place."); *see also Goldfuss v. Traxler*, No. 16-08-12, 2008 WL 5053451, at *5–6 (Ohio Ct. App. Dec. 1, 2008) (concluding that res judicata did not preclude a later civil protection order because the petitioner's second petition alleged facts concerning events that occurred subsequent to the dismissal of her first petition); *Moore v. Moore*, No. 02CA0071, 2003 WL 21658466, at *1 (Ohio Ct. App. July 16, 2003) (affirming the issuance of a civil protection order and ruling that res judicata did not apply "[b]ecause the trial court based its decision upon evidence that was not previously adjudicated"). This approach addresses the "unique considerations in applying normal principles of res judicata to claims arising out of continuing or renewed conduct," such as claims of civil stalking. *White*, 2008 SD 52, ¶ 18.

¶17   Furthermore, we are not persuaded by Grandmother's argument that there was no final judgment in the First District Court because Husband did not appear. First, contrary to Grandmother's claim, the appearance of all parties is not a prerequisite for a judgment to be a final judgment on the merits for the purposes of claim preclusion.[12] *Cf. State v. Sommerville*, 2013 UT

---

12. Grandmother also argues that the First District Court's denial of her first petition was not a final judgment on the merits because the court did not hold an evidentiary hearing before ruling. However, the fact that the First District Court did not hold an evidentiary hearing does not defeat the application of claim preclusion. Our supreme court's case law indicates that an

(continued...)

App 40, ¶ 32, 297 P.3d 665 ("To be on the merits, a judgment does not have to proceed to trial. Rather, a judgment on the merits may be made at any stage of the litigation . . . ." (citation and internal quotation marks omitted)). All that is required is that the party seeking to invoke claim preclusion must establish that the earlier suit involved "the same parties or their privies and the same cause of action." *Buckner v. Kennard*, 2004 UT 78, ¶ 12, 99 P.3d 842. As a consequence, the finality of the Fourth District Court's denial of Grandmother's first petition is not negated by the fact that Husband did not appear.[13]

---

12. (...continued)
evidentiary hearing is not required for res judicata to apply because an earlier action may bar a later action even if the first action was resolved on the allegations in the pleadings alone, i.e., without an evidentiary hearing. For example, our supreme court adopted the reasoning of the federal district court for the district of Utah, which reasoned that "'[a] motion to dismiss for failure to state a claim upon which relief can be granted . . . [is a] dismissal . . . on the merits and is accorded res judicata effect.'" *See Mack v. Utah State Dep't of Commerce*, 2009 UT 47, ¶ 29, 221 P.3d 194 (second alteration and omissions in original) (quoting *FDIC v. Paul*, 735 F. Supp. 375, 380 (D. Utah 1990)); *see also* Utah R. Civ. P. 12(b) (indicating that a rule 12(b)(6) motion to dismiss for failure to state a claim is evaluated on matters within the pleadings).

13. Moreover, Grandmother had an opportunity to appear and present allegations and evidence. *See* Utah Code Ann. § 77-3a-101(4) (LexisNexis 2012) (requiring a petition for a civil stalking injunction to include "specific events and dates of the actions constituting the alleged stalking" and "corroborating evidence of stalking, which may be in the form of a police report, affidavit, record, statement, item, letter, or any other evidence which tends to prove the allegation of stalking"); *cf. 3D Constr. & Dev., LLC v. Old Standard Life Ins. Co.*, 2005 UT App 307, ¶ 19, 117 P.3d 1082
(continued...)

¶18    We also are not convinced that the First District Court's statement that Grandmother may consider other legal proceedings meant that the First District Court did not reach the merits of Grandmother's first petition. Rather, we believe that Grandmother's proposed interpretation is far from obvious and highly speculative. After the First District Court's denial of Grandmother's first petition, Grandmother could have filed a later petition upon the subsequent occurrence of additional alleged stalking events. *See White*, 2008 SD 52, ¶¶ 20–21. Grandmother would be precluded from alleging other acts of stalking that occurred prior to the First District petition because she could and should have raised them in that petition. Had she done so, Grandmother could have presented the other events as part of the course of conduct. *See id.* ¶ 20 ("[E]vidence of underlying activity from a prior claim may be admissible to prove a new claim."). In any event, the First District Court's reference to "other legal proceedings" is, at most, an advisory opinion. *See Summit Water Distrib. Co. v. Summit County*, 2005 UT 73, ¶ 50, 123 P.3d 437 ("Our settled policy is to avoid giving advisory opinions in regard to issues unnecessary to the resolution of the claims before us."); *Reynolds v. Reynolds*, 788 P.2d 1044, 1045 (Utah Ct. App. 1990) (noting that the function of courts is not to give opinions on merely abstract or theoretical matters).[14]

---

13. (...continued)
(rejecting plaintiff's argument that the fully and fairly litigated prong of issue preclusion requires an actual trial or its equivalent and instead concluding that Utah's case law supports the view that "this element is met if the party against whom issue preclusion is sought had adequate notice and an opportunity to litigate the issue").

14. We find Grandmother's reliance on *Fundamentalist Church of Jesus Christ of Latter-Day Saints v. Horne*, 2012 UT 66, 289 P.3d 502, to be unavailing. Grandmother argues that this case stands for the
(continued...)

¶19 Under the circumstances of this case, we conclude that the First District Court's denial of Grandmother's first petition for a civil stalking injunction was a final judgment on the merits. Based on the allegations and evidence attached to Grandmother's first request, the First District Court determined that the events described were not stalking events because Husband "did not make any threats, and no threats were implied by [Husband's] conduct." The First District Court also determined that Grandmother did not have any immediate fear because the most recent alleged stalking event occurred four months earlier. In ruling that an ex parte stalking injunction would not be issued, the First District Court necessarily concluded that Grandmother had not shown reason to believe that Husband had engaged in a course of conduct against her that "would cause a reasonable person: (a) to fear for the person's own safety or the safety of a third person; or (b) to suffer other emotional distress." *See* Utah Code Ann. § 76-5-106.5(2) (LexisNexis 2012); *see also id.* § 77-3a-101(5)(a). As a

---

14. (...continued)

proposition that "[a] decision declining to reach the merits based on [the] availability of an alternative remedy . . . is not preclusive." In that case, the Utah Supreme Court addressed the preclusive effect of its prior decision dismissing a petition for extraordinary writ on laches grounds. *Id.* ¶ 53. Petitions for extraordinary writ are typically available only when "no other plain, speedy and adequate remedy is available," i.e., when a petitioner has no other alternative remedy. Utah R. Civ. P. 65B(a). In ruling that its prior decision would preclude a subsequent claim, the supreme court explained that it "did not dismiss the petition in [the earlier case] based on the availability of an alternative remedy." *Horne*, 2012 UT 66, ¶ 19. Rather, the court deemed its dismissal of the earlier case as a preclusive judgment on the merits because it had dismissed the earlier case "in light of [its] resolution of the merits of the respondents' affirmative defense of laches." *Id.* Given the unique context of *Horne*, we are not persuaded by Grandmother's interpretation and application of *Horne* to the case before us.

result, the First District Court determined that the 2009 Incident and the 2012 Incident were not stalking events justifying the issuance of an ex parte stalking injunction and possible further proceedings. Thus, the First District Court's denial of Grandmother's first petition involved the "application of the relevant law to the facts of the case," *see Sommerville*, 2013 UT App 40, ¶ 32 (citation and internal quotation marks omitted), and therefore rendered a final judgment on the merits.

¶20    After a court determines that a petitioner failed to show reason to believe that an offense of stalking has occurred, the court's denial of a ex parte stalking petition is final because no further proceedings are contemplated by the civil stalking statute.[15] *See* Utah Code Ann. § 77-3a-101. In contrast, when a district court issues an ex parte civil stalking injunction, further proceedings are allowed under the statute because the respondent has the option of requesting an evidentiary hearing before the ex parte injunction automatically becomes a three-year civil stalking injunction. *See id*. § 77-3a-101(6). But where, as here, the court reviewed the evidence and determined that a petitioner did not satisfy the initial burden of showing reason to believe there has been stalking, the petitioner has no basis upon which the requested relief—the issuance of a stalking injunction—can be granted.

¶21    Due to the First District Court's implicit determination that the 2009 Incident and the 2012 Incident were not stalking events,

---

15. The Cohabitant Abuse Act, which governs the issuance of protective orders, stands in contrast to the civil stalking statute because it does provide for additional proceedings when an ex parte petition for a protective order is denied. Specifically, the Cohabitant Abuse Act instructs, "When a court denies a petition for an ex parte protective order . . . , upon the request of the petitioner, the court shall set the matter for hearing and notify the petitioner and serve the respondent." Utah Code Ann. § 78B-7-107(3) (LexisNexis 2012).

the Fourth District Court was precluded from granting a civil stalking injunction solely based on the same two events. Although Grandmother alleged more details regarding those two particular incidents and she alleged six other stalking events in the second petition, the Fourth District Court only made findings regarding the 2009 Incident and the 2012 Incident—the same two incidents that the First District Court ruled were not stalking events. And unlike the cases where the petitioner alleged additional stalking events that occurred subsequent to the denial of a first request for an injunction, *see, e.g., White v. Bain*, 2008 SD 52, ¶¶ 20–21, 752 N.W.2d 203 (per curiam), Grandmother did not allege any stalking events that occurred between the time of her first petition and her second petition. Rather, Grandmother's additional allegations in the second petition were based on events that predated the First District Court's denial of her first petition. Grandmother could have raised the additional details and six other alleged events in her first petition and her failure to do so in the First District Court does not justify her refiling in the Fourth District Court. *Cf. Nipper v. Douglas*, 2004 UT App 118, ¶ 10, 90 P.3d 649 ("Not only does claim preclusion prevent relitigation of a claim, it also prevents the litigation of claims that could and should have been litigated in the prior action, but were not." (citation and internal quotation marks omitted)). Because we conclude that claim preclusion bars Grandmother's action in the Fourth District Court, we do not reach Husband's issue preclusion argument. *See Mack v. Utah State Dep't of Commerce*, 2009 UT 47, ¶ 26, 221 P.3d 194; *Hansen v. Bank of N.Y. Mellon*, 2013 UT App 132, ¶ 5 n.1, 303 P.3d 1025.

¶22    Finally, Husband requests an award of attorney fees and asks us to remand this case with instructions for the district court to consider awarding him attorney fees incurred both at the district court and on appeal. The civil stalking statute provides district courts with discretion to award reasonable attorney fees to either party. *Butters v. Herbert*, 2012 UT App 329, ¶ 20, 291 P.3d 826; *see also* Utah Code Ann. § 77-3a-101(16) (LexisNexis 2012) ("After a hearing with notice to the affected party, the court may enter an order requiring any party to pay the costs of the action, including

reasonable attorney fees.") We have previously explained that this section is "permissive in nature, providing the trial court with the discretion to determine whether to award attorney fees." *Ellison v. Stam*, 2006 UT App 150, ¶ 46, 136 P.3d 1242. In his motion to dismiss, Husband requested an award of attorney fees incurred in defending the action. Husband cited section 77-3a-101(16), but his argument focused on his assertion that Grandmother's claims were not brought in good faith. In granting Grandmother's petition, the district court did not address Husband's request. Because we reverse the district court's decision to issue the stalking injunction, we remand with instructions for the district court to consider under the statute whether to award Husband the attorney fees he incurred at the district court and on appeal.

¶23     In summary, the Fourth District Court erred in issuing the stalking injunction against Husband because the First District Court's denial of Grandmother's petition had preclusive effect. We therefore reverse and remand.

————————

PEARCE, Judge (dissenting):

¶24     Because Husband failed to meet his burden of demonstrating that the denial of Grandmother's initial ex parte petition for a civil stalking injunction constituted a final judgment on the merits, I respectfully dissent.

¶25     Grandmother argues that the denial of an ex parte civil stalking injunction petition can never be considered a final judgment. The district court appeared to accept that argument, stating, "I don't view the denial of the ex parte, the application for the stalking injunction to constitute an adjudicatory proceeding that would rise to the level of collateral estoppel or res judicata." The majority persuasively holds that, contrary to Grandmother's assertion, in some instances the denial of an ex parte civil stalking

petition can act as a final judgment for claim preclusion purposes.[16] That, however, does not resolve the question of whether Husband met his burden of establishing that the denial the First District Court issued was a final judgment on the merits.

¶26    A party seeking to invoke collateral estoppel must prove each of its elements. *Busch v. Busch*, 2003 UT App 131, ¶ 6, 71 P.3d 177. As a result, Husband bore the burden of establishing that the denial of Grandmother's initial petition constituted a "final judgment on the merits." *See, e.g.*, *Moss v. Parr Waddoups Brown Gee & Loveless*, 2012 UT 42, ¶ 21, 285 P.3d 1157 (citation and internal quotation marks omitted). Husband did not even attempt to meet this burden in the district court. His motion to dismiss Grandmother's second petition did not use the terms "res judicata," "collateral estoppel," "issue preclusion," or "final order." Instead he argued that the petition filed in the Fourth District Court was "judge shopping." Husband made the same argument at the motion hearing, repeating his assertion that Grandmother's second petition should be dismissed because "[i]t's clearly judge shopping."

¶27    Had he tried, Husband would have been unable to shoulder his burden of demonstrating that the denial was a final judgment on the merits. "'On the merits' is a term of art that means that a judgment is rendered only after a court has evaluated the relevant evidence and the parties' substantive arguments." *State v. Sommerville*, 2013 UT App 40, ¶ 32, 297 P.3d 665 (citation and

---

16. The majority opinion does not reach the question of whether the denial of a petition for an ex parte civil stalking injunction could ever be considered to have "completely, fully, and fairly litigated" the issues raised in a civil stalking injunction petition for issue preclusion purposes. *See Moss v. Parr Waddoups Brown Gee & Loveless*, 2012 UT 42, ¶ 23, 285 P.3d 1157 (citation and internal quotation marks omitted).

internal quotation marks omitted). A final judgment on the merits "ends the controversy between the parties." *Salt Lake City Corp. v. Layton*, 600 P.2d 538, 539 (Utah 1979). A judgment is "on the merits" if it "completely disposes of an underlying cause of action, or determines that plaintiff has no cause of action." *Dennis v. Vasquez*, 2003 UT App 168, ¶ 8, 72 P.3d 135 (emphasis omitted) (citation and internal quotation marks omitted). In *Dennis*, we held that a judgment was final and on the merits because it was "clear that the judgment was final and precluded [the plaintiff] from pursuing any remedy or initiating any further proceedings in small claims court." *Id.* ¶ 7. Husband therefore needed to establish that the denial was intended to end the controversy—that is, the legal controversy—between himself and Grandmother. By its express language, the denial did not.

¶28    The First District Court denied Grandmother's first petition using the form the Utah Code requires the Administrative Office of the Courts to prepare. *See* Utah Code Ann. § 77-3a-101(3) (LexisNexis 2012). The form, titled "Denial of Civil Stalking Injunction," contains various preprinted reasons for the denial of a petition, each with a corresponding box for the district court to check if applicable. By checking these boxes, a court can indicate that it "will not grant your Request for Civil Stalking Injunction" for a variety of reasons, including "Corroborating documents are missing"; "You did not describe the specific events and dates of the alleged stalking"; and "[t]he Court does not have jurisdiction because neither party resides nor did the events happen in this county."

¶29    Here, the First District Court denied Grandmother's petition by checking the box next to the language "The events you described are not stalking because . . . ." Within that section, the court checked two subsections: (1) "the Respondent did not make any threats, and no threats were implied by Respondent's conduct"; and (2) "other (explain)." In the "other" subsection, the court handwrote, "the last episode was April 27, 2012 & Petitioner

is seeking a stalking injunction 4 months later so no immediate fear or alleged threats."

¶30     In its denial order, the First District Court also checked the separate box entitled "Other (explain)." Next to that, the court penned, "Petitioner may consider other legal proceedings to restrain respondent's alleged conduct."[17] The majority dismisses this comment as "at most, an advisory opinion." *See supra* ¶ 18. Grandmother argues that the language is a window into the First District Court's intent that reveals that the court did not intend the order to fully resolve the legal issues between the parties arising out of the alleged conduct. Grandmother appears to suggest that this language is akin to a dismissal without prejudice to refile "other legal proceedings." The majority opines that Grandmother's proposed interpretation of that language is "far from obvious and highly speculative." *See id*. The majority then suggests that the language could have meant that Grandmother was free to present additional information concerning subsequent stalking events. Rather than speculate about what the First District Court had in mind, I prefer to confess that it is not clear what that court intended. And because it is not clear that the order embodies a final judgment, I would conclude that Husband failed to establish claim preclusion.

¶31     Our supreme court has recognized that "collateral estoppel can yield an unjust outcome if applied without reasonable

---

17. The form also has a box that reads, "The Court will reconsider if a response is filed." The First District Court did not check that box, which suggests that it may have considered the matter to be concluded. However, the court's comment regarding other legal proceedings creates an ambiguity concerning the finality of the order. For the reasons discussed herein, such ambiguity only serves to frustrate Husband's ability to meet his burden of demonstrating that the dismissal is a final order.

consideration and due care." *Buckner v. Kennard*, 2004 UT 78, ¶ 15, 99 P.3d 842. In 2005, eighty-four percent of people seeking civil stalking injunctions in Utah courts did not have the benefit of counsel to assist them. *See* Utah Judicial Council, Final Report—2006 Survey of Self Represented Parties in the Utah State Courts at 2 (2006), *available at* http://www.utcourts.gov/survey. It is not difficult to conjure scenarios in which zealous application of res judicata principles to the denial of pro se stalking injunction petitions would lead to unjust results.

¶32    For example, a pro se petitioner who mistakenly believes she need only allege a single stalking incident and receives a form denial with the check next to the boxes that read "The events you described are not stalking because . . . ." and "they were not repeated" will, under the majority's holding, be prohibited from refiling unless and until a new stalking event occurs. That pro se petitioner will have to await a new stalking event even if she could have initially alleged multiple stalking incidents, because res judicata principles prevent the litigation of claims that could or should have been asserted in the first instance. *See, e.g., Gillmor v. Family Link, LLC*, 2012 UT 38, ¶ 10, 284 P.3d 622. In my opinion, that would constitute an unjust outcome—an unjust outcome that can be avoided by simply refusing to apply preclusive effect to the denial of an ex parte civil stalking injunction petition unless it is clear that the denial was intended to operate as a final judgment on the merits.

¶33    Our supreme court has stated that the policies underlying res judicata include: "(1) preserving the integrity of the judicial system by preventing inconsistent outcomes; (2) promoting judicial economy by preventing previously litigated issues from being relitigated; and (3) protecting litigants from harassment by vexatious litigation." *Buckner*, 2004 UT 78, ¶ 14. In the context of ex parte civil stalking injunctions, none of these purposes are undercut by requiring those seeking to benefit from the application of res judicata principles to actually establish that the district court intended its denial to be a final judgment and by resolving

ambiguities in favor of the nonmoving party. All of the stated purposes can just as easily be promoted by requiring a district court to make explicit that its denial of a petition for a civil stalking injunction is intended to be a final judgment on the merits.

¶34    For these reasons, I dissent.

————