#24698-a-PER CURIAM
**2008 SD 52**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

KATHLEEN S. WHITE
and ALLEN L. WHITE,                     Petitioners and Appellees,

v.

NANCY BAIN,                             Respondent and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT
OF THE THIRD JUDICIAL CIRCUIT
LAKE COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE TIM D. TUCKER
Judge

\* \* \* \*

DANIEL J. BROWN of
Lammers, Kleibacker & Brown, LLP         Attorneys for petitioners
Madison, South Dakota                    and appellees.

KENNETH M. TSCHETTER of
Tschetter Law Office, PC                 Attorney for respondent
Sioux Falls, South Dakota                and appellant.

\* \* \* \*

CONSIDERED ON BRIEFS
ON APRIL 21, 2008

OPINION FILED 6/18/08

#24698

PER CURIAM

[¶1.]      Nancy Bain appeals from a protection order restraining her contact with Allen and Kathleen White (the Whites).  We affirm.

FACTS

[¶2.]      Bain and the Whites owned neighboring cabins on the shore of Lake Madison.[1]  The parties were one-time friends who entered into an informal agreement for the construction of garages on their neighboring properties that would be connected by a common deck.  Bain was a contractor and, although she was not hired by the Whites, was heavily involved in the construction of both garages and the connecting deck.  Disagreements eventually arose between the parties over responsibility for certain items of labor and costs related to the garage construction.  There were additional disagreements over use of the common deck and Bain's storage of some of her property in the Whites' garage.

[¶3.]      In late 2006 and early 2007, Bain began sending the Whites a series of bellicose letters demanding payment of certain costs and labor expenses related to the garage construction and accusing the Whites of manipulation, cheating, lying, laziness and theft.  When Bain's letters failed to obtain payment, she began making phone calls to the Whites making similar demands and accusations.  After one such phone call in early 2007, the Whites filed a petition for a protection order against Bain.  A hearing on the petition was held on April 2, 2007.  The trial court denied the petition but reprimanded Bain for her inappropriate letters and phone calls,

---

1.    The Whites' regular residence was in Council Bluffs, Iowa.  Their cabin on Lake Madison was a recreational residence used by them about six months a year.

orally instructed her to cease her behavior and further advised the parties to resolve their differences or they would be back in court again.

[¶4.]     On August 14, 2007, Mrs. White was in her cabin when she saw Bain approach the residence without invitation and walk across the yard to an open sliding glass door in the kitchen. As Mrs. White tried to shut the door, Bain resisted, forced her way into the premises and demanded the return of some kitchen chairs she had once loaned the Whites. Mrs. White approached Bain and Bain pushed her out of the way with her hands, grabbed one of the kitchen chairs and then used it to again push Mrs. White away. At that point, Mr. White entered the kitchen, repeatedly told Bain to leave and backed her out of the cabin through the open glass door and over onto her own property.[2] Authorities were then summoned and all of the parties were questioned by law enforcement about the incident.

[¶5.]     The Whites were distraught over their confrontation with Bain and Mrs. White also visited a physician about pain in her shoulder and neck that she attributed to Bain having pushed her. On August 27, 2007, the Whites filed another petition for a protection order against Bain. A hearing was held on October 1, 2007. After the hearing, the trial court entered a protection order effective until September 2010 prohibiting Bain from coming within five feet of the Whites and further prohibiting her from any form of contact with them. The order also required Bain to turn over all of her weapons and ammunition to the local sheriff and specifically directed her not to speak to the Whites or to enter onto their property at the cabin. Bain appeals.

---

2.     Mr. White made no physical contact with Bain during this altercation.

ISSUE ONE

[¶6.]     **Did the trial court err in finding that stalking took place?**

[¶7.]     SDCL 22-19A-11 provides:

> Upon notice and a hearing, *if the court finds by a preponderance of the evidence that stalking has taken place*, the court may provide relief as follows:
>
> (1) Restrain any party from committing acts of stalking or physical injury as a result of an assault or a crime of violence as defined in subdivision 22-1-2(9);
>
> (2) Order other relief as the court deems necessary for the protection of the person seeking the protection order, including orders or directives to law enforcement officials.
>
> Any relief granted by the order for protection shall be for a fixed period and may not exceed five years.

(Emphasis added).  Under this provision, a prerequisite for issuance of a protection order is a finding that "stalking" has taken place.  *Id.*  Bain argues that the trial court erred in finding that stalking took place here.

[¶8.]     The standards of review in protection order cases have been previously established:

> The trial court's decision to grant or deny a protection order is reviewed under the same standard that is "used to review the grant or denial of an injunction."  First, we determine whether "the trial court's findings of fact were clearly erroneous."  We will not set aside the trial court's findings of fact unless, after reviewing all of the evidence, "we are left with a 'definite and firm conviction that a mistake has been made.'"  Furthermore, "[t]he credibility of the witnesses, the import to be accorded their testimony, and the weight of the evidence must be determined by the trial court, and we give due regard to the trial court's opportunity to observe the witnesses and examine the evidence."  If the trial court's findings of fact

are not clearly erroneous, we "must then determine whether the trial court abused its discretion in granting or denying the protection order."

Schaefer v. Liechti, 2006 SD 19, ¶ 8, 711 NW2d 257, 260 (citations omitted).

[¶9.]     "Stalking" is defined by SDCL 22-19A-1 which provides in pertinent part:

No person may:

(1)     Willfully, maliciously, and repeatedly follow or harass another person;

* * *

(3)     Willfully, maliciously, and repeatedly harass another person by means of any verbal, electronic, digital media, mechanical, telegraphic, or written communication.

A violation of this section constitutes the crime of stalking.

[¶10.]     The trial court found that Bain: "pursued a willful and knowing course of conduct which seriously alarm[ed], annoy[ed] or harasse[d] the [Whites] with no legitimate purpose, and that the pattern of conduct [was] a series of acts over a period of time [that showed] a continuing pattern of harassment."  Thus, the trial court found that stalking was committed by "harassment" as set forth in SDCL 22-19A-1(1) and (3).  "Harassment" is defined by SDCL 22-19A-4: "For the purposes of this chapter, harasses means a knowing and willful course of conduct directed at a specific person which seriously alarms, annoys, or harasses the person, and which serves no legitimate purpose."

[¶11.]     Bain argues that the trial court was clearly erroneous in finding that harassment occurred because it had previously found that her contacts with the

White's served the legitimate purpose of attempting to collect an unpaid debt. Bain refers to the trial court's oral findings at the close of the first protection order hearing.[3] While the trial court did state at that time that Bain's letters involved collection of a bill and did not rise to the level of a stalking or protection order case, Bain ignores that the court also issued a stern series of warnings to her in which it repeatedly pointed out that her letters were "inappropriate," that they were "annoying," that she should not send such letters, that she must exercise "professional behavior," that she could not continue writing such letters and that she must "quit the phone calls [and] quit the letters." These warnings reflect a degree of equivocation by the trial court as to the issue of harassment and a clear indication to Bain that similar acts committed in the future could well result in an adverse determination on the harassment issue.

[¶12.]     "Harassment" requires a course of alarming, annoying or harassing conduct. SDCL 22-19A-4. A "course of conduct" is "a pattern of conduct composed of a series of acts over a period of time[.]" SDCL 22-19A-5. Thus, while an act or a preliminary set of acts might not rise to the level of harassment because it does not show a sufficient pattern of conduct, as additional alarming or annoying acts are committed, a more complete pattern of conduct may be established and the line between mere annoyance and legal harassment may be crossed. Clearly that is what occurred here where an enraged Bain finally committed what was arguably an assault on Mrs. White as the final link in the chain of annoying and harassing acts

---

3.     The trial court entered no written findings or conclusions in the first protection order proceedings.

she directed toward the Whites as a consequence of the debt collection issue. Bain's contention that this incident served "the legitimate purpose of retrieving chairs" is absurd in light of the White's testimony concerning her illegal entry and crazed instigation of a physical confrontation over some old furniture that had apparently been meaningless to her up until that point in time. Bain's argument is based upon her own testimony and version of the events and not the testimony of the Whites accepted by the trial court in entering its finding of harassment. *See* Osman v. Karlen and Associates, 2008 SD 16, ¶ 15, 746 NW2d 437, 443 (quoting Fin-Ag, Inc. v. Feldman Bros., 2007 SD 105, ¶ 19, 740 NW2d 857, 862 - 863)(doubts over a trial court's findings of fact are to be resolved in favor of the successful party's version of evidence). Such a biased view of the record will not support a determination of clear error in a trial court's findings. *Id*.

[¶13.] The trial court's finding of stalking by harassment also required a showing that Bain acted "maliciously." SDCL 22-19A-1(1) & (3). Bain argues that the trial court erred in finding that she acted maliciously. "Maliciously" imports "a wish to intentionally vex, annoy, or injure another person[.]" SDCL 22-1-2(1)(a). Bain's series of offensive and insulting letters to the Whites was clearly vexing and annoying as found by the trial court at the close of the first protection order hearing. Bain's entry into the White's residence and attempt to recover her chairs by force also reflected an intention to vex and annoy the Whites and perhaps even to injure Mrs. White. Thus, there was no error in the trial court's finding of malice. Bain's contentions to the contrary are again based upon a biased view of the testimony and evidence in her favor rather than the evidence in favor of the trial

court's findings. This provides no basis for reversal of the finding of malice. *Osman, supra.*

[¶14.]     Based upon the foregoing, the trial court did not err in finding that stalking took place in this case.

ISSUE TWO

[¶15.]     **Did res judicata bar the trial court from considering Bain's collection letters in determining whether stalking took place?**

[¶16.]     At the beginning of the second protection order hearing, the trial court took judicial notice of the prior protection order proceeding between the parties "for all the background information." Bain's counsel registered no objection to consideration of the prior proceeding "for that purpose." However, at the close of the hearing, Bain's counsel objected on res judicata grounds to consideration of Bain's collection letters from the first proceeding as part of the basis for a finding that stalking took place. The objection was denied and the trial court later entered the following finding:

> That [Bain] has a history of using inappropriate collection practices in an effort to collect upon a disputed debt which she believes the [Whites] owe her. That [Bain] has written letters which have been received as evidence in TPO No. 07-06 [*i.e.*, the first protection order proceeding]. This Court has taken judicial notice of TPO NO. 07-06 and finds . . . [Bain's] actions on August 14, 2007 [*i.e.*, the chair incident] to be a pattern of conduct that is a series of acts over a period of time which is alarming, annoying and harassing with no legitimate purpose.

[¶17.]     Bain argues that res judicata should have barred the trial court from considering her letters from the first protection order hearing as part of the basis for its finding of stalking.

> The applicability of the doctrine of res judicata is a question of law examined de novo. "'The doctrine of res judicata serves as *claim* preclusion to prevent relitigation of an *issue actually litigated or which could have been properly raised and determined* in a prior action.'"
>
> "'For purposes of res judicata, a cause of action is comprised of the facts which give rise to, or establish, the right a party seeks to enforce . . . . [T]he test is a query into whether the wrong sought to be redressed is the same in both actions.'"

Glover v. Krambeck, 2007 SD 11, ¶¶ 17-18, 727 NW2d 801, 805 (citations omitted)(emphasis original).

[¶18.]    Authorities have recognized that there are unique considerations in applying normal principles of res judicata to claims arising out of continuing or renewed conduct such as those here.  One treatise devotes a section of analysis to the issue.  *See* 18 Charles Alan Wright et al., *Federal Practice and Procedure* § 4409 (2d ed 2002).  As set forth therein:

> The line between the consequences of completed past conduct and the impact of continuing or renewed conduct is itself blurred when the consequences of completed conduct are aggravated by separate or continuing conduct.  Aggravation of an original injury by separate or continuing conduct may support a new claim.
>
> * * *
>
> The conclusion that continuing activity generates a new claim need not mean that the earlier activity is irrelevant to the new claim.  Although claim preclusion bars reopening the claim advanced in the first action, evidence of the underlying activity may be admissible to prove the new claim.

*Id.*

[¶19.]     This Court has applied principles similar to those above in an injunction action where a respondent attempted to plead the denial of an earlier injunction against an alleged nuisance (a drainage ditch) as a bar to a second action to abate the nuisance.  *See* Lee v. Schultz, 374 NW2d 87 (SD 1985).  In reversing the trial court's determination that res judicata barred the second action, this Court concluded:

> At the time of the commencement of the first action, there was simply no damage shown resulting from the ditching. If [petitioner] had appealed the trial court's first decision, it would undoubtedly have resulted in an affirmance. But, now, *circumstances have changed.* . . . [A] considerable portion of [petitioners'] land is inundated. They are entitled to seek injunctive relief.

*Lee*, 374 NW2d at 91 (emphasis added).

[¶20.]     While one might question the relevance of a case on drainage ditches to a protection order proceeding, the scenarios are more similar than they might initially appear.  As in *Lee*, the trial court here found the evidence in the first action insufficient to warrant injunctive relief.[4]  Bain then committed new acts of harassment against the Whites and, as with the flooding in *Lee*, circumstances changed and new evidence existed that made it sufficient for the Whites to obtain relief.  Thus, the trial court appropriately allowed the White's to proceed over Bain's res judicata objections.  As for contentions concerning the propriety of considering the record of the first action in the second action, this was also done in *Lee* and is consistent with the observation in *Wright and Miller* that evidence of underlying

---

4.     A protection order is a form of injunction.  Sjomeling v. Stuber, 2000 SD 103, ¶ 11, 615 NW2d 613, 616.

activity from a prior claim may be admissible to prove a new claim. *See Lee*, 374 NW2d at 88 (review of findings of fact from first injunction action). *See also* Wright et al., *supra*, at § 4409.

[¶21.] We emphasize that, essential to our decision here are the acts committed by Bain subsequent to the first protection order proceeding. Absent those subsequent acts, there would have been no changed circumstances such as those in *Lee* and normal principles of res judicata would have barred the Whites from simply reopening the same claims they advanced in the first protection order proceeding. *See* Wright et al., *supra*, at § 4409 (claim preclusion bars reopening claim advanced in first action). *See also e.g.* Bumgardner v. Bumgardner, No. CA2004-07-172, 2005 WL 1545790 (OhioCtApp July 5, 2005)(trial court did not abuse its discretion in dismissing appellant's second petition for a protection order on basis of res judicata where grounds for petition were based solely on events alleged in appellant's first petition). Because of Bain's subsequent acts, however, we hold that res judicata did not bar the second action or the trial court from considering her collection letters as *part* of the basis for determining that stalking took place.

[¶22.] Affirmed.

[¶23.] GILBERTSON, Chief Justice, and SABERS, KONENKAMP, ZINTER and MEIERHENRY, Justices, participating.