#27203-a-SLZ

**2015 S.D. 16**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

BARBARA DONAT,                                          Petitioner and Appellee,

    v.

CORY JOHNSON,                                          Respondent and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
LAWRENCE COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE WARREN G. JOHNSON
Retired Judge

* * * *

JOSEPH M. KOSEL of
Johns & Kosel, Prof., LLC
Lead, South Dakota                                          Attorneys for petitioner
                        and appellee.


ERIC T. DAVIS
THOMAS E. BRADY of
Brady Pluimer, PC
Spearfish, South Dakota                                          Attorneys for respondent
                        and appellant.

* * * *

CONSIDERED ON BRIEFS
ON FEBRUARY 17, 2015

OPINION FILED **03/25/15**

#27203

ZINTER, Justice

[¶1.]        Barbara Donat obtained a protection order against Cory Johnson. Johnson appeals, contending that the circuit court clearly erred in its factual findings, abused its discretion in granting the protection order, violated Johnson's due process rights, erred in permitting "other acts" evidence, applied an unconstitutionally vague statute, and abused its discretion in crafting the protection order.  We affirm.

*Facts and Procedural History*

[¶2.]        Donat and Johnson met in 2008 through social activities involving their spouses and a third couple.  The three couples engaged in activities approximately 100 times from 2008 through 2011.  However, beginning in 2011 and continuing into 2012, a series of events lead to a dissolution of the couples' friendship.  Although many of the details of those events are in dispute, we restate them in a light most favorable to the circuit court's findings.  *See State v. Akuba*, 2004 S.D. 94, ¶ 25, 686 N.W.2d 406, 417 (quoting *State v. Almond*, 511 N.W.2d 572, 573 (S.D. 1994)) (noting that a circuit court's resolution of a question of fact "will be upheld unless our examination of the evidence, construed in a light most favorable to the trial court's findings, convinces us that the finding was clearly erroneous").

[¶3.]        In June 2011, while the three couples were socializing at a bar, Johnson asked to use Donat's phone.  Donat refused.  An intoxicated Johnson yelled at her and called her offensive names.  The circuit court found that Johnson's words caused Donat to leave the bar in emotional turmoil and fear.

[¶4.]        In January 2012, Donat's husband told Johnson not to purchase a lot next to Donat's home.  Johnson later became angry, drove to Donat's home, and

-1-

shoved a cake into Donat's husband, stating: "I need to get out of here before I do something I regret."

[¶5.]      In March 2012, Johnson made an unwanted sexual advance on Donat. After dropping off his wife and daughter from an event, Johnson took Donat home. Johnson stopped at the end of Donat's driveway and ran his hand up her leg, trying to get underneath her dress. Johnson told Donat how hurt he was that she did not want him to buy the lot next to her home. He also indicated he was hurt that they had not been talking for the past few months. Johnson asked her to kiss him and stated that he knew she would share his feelings if she kissed him. Donat rebuffed Johnson, demanding to be released from the vehicle. Johnson pleaded with her not to tell his wife. Donat told a friend about the incident, and thereafter, Donat decided to only see Johnson in public where others were present.

[¶6.]      Johnson and his wife did ultimately purchase a lot in the same subdivision as Donat (but not the lot adjacent to Donat's home). Two roads provided access to the Johnsons' lot—a 3.4-mile, unpaved road and a 1.5-mile, paved road running directly in front of Donat's home. Johnson primarily used the paved road. After Johnson purchased the lot, he made frequent trips to his property to visualize the layout of his future home. Additionally, Johnson had a contract with the subdivision to plow and sand the paved road during the winter months, so Johnson frequently used the road running in front of Donat's home.

[¶7.]      There were additional incidents in 2012, culminating with a final incident in August 2012. On that occasion, the three couples attended a banquet where Johnson became intoxicated. Johnson beat the third husband in the

presence of the other couples, injuring him severely. After that incident, the Donats and the third couple avoided all contact with Johnson.

[¶8.]        In December 2013, over a year after their last contact, Johnson approached Donat while she was waiting for her son at a bus stop in the subdivision. Johnson, whom Donat had never seen at the bus stop before, pulled up next to Donat and indicated she should roll her window down. Donat complied, and Johnson asked about road conditions.[1] The two made "small talk" for a few moments, and Donat drove away. At the hearing, Donat testified that she felt very uncomfortable during the encounter. This was the first time Donat believed Johnson was stalking/harassing her. Over the next two months, Johnson appeared at the bus stop six times. According to Donat, Johnson would drive by very slowly and glare at her.

[¶9.]        From the fall of 2013 to the spring of 2014, Donat also observed Johnson driving slowly by her home. Johnson would travel slowly and stop in front of the home while glaring at Donat. The neighbors across the street, the Merchants, confirmed that a white truck would slow down and stop in front of Donat's home.[2] Mr. Merchant, a retired Marine Corps Colonel, testified that the truck would stop in such a way so as to have an unobstructed view into Donat's home. Merchant became concerned enough that, on several occasions, he attempted to approach the

---

1.    The bus stop is located at the base of a hill on the 1.5-mile paved road in the subdivision. Johnson was still under contract to plow at that time.

2.    During the times Johnson's vehicle was observed in front of Donat's residence, neither Donat nor the Merchants witnessed Johnson engaged in sanding or plowing pursuant to his contract with the subdivision.

driver while he was stopped. However, every time Merchant attempted to confront the truck's operator (later confirmed to be Johnson),[3] the vehicle would quickly leave the scene. Merchant thought Johnson might be looking at Merchant's property or family. Mrs. Merchant also testified that she saw the truck drive slowly and stop in front of Donat's home on numerous occasions.

[¶10.]     In April 2014, several additional incidents occurred that alarmed Donat. On April 2, Donat left her home to find that her vehicle had moved to the end of her driveway. Donat was concerned about Johnson's repeated drive-bys, and Donat believed that he may have moved her vehicle to "mess" with her. On April 5, Donat attended a campus tour at a local university. Johnson, a university employee, confronted Donat in a golf cart. Johnson drove towards Donat, passed closely by while glaring at her, and then quickly changed direction. On April 14, Johnson drove by Donat on two occasions waiving "obnoxiously" and "overenthusiastically." The circuit court found that these exaggerated gestures were directed at Donat. On April 16 and 17, Donat consulted an attorney, a Spearfish deputy, and the Lawrence County Sheriff about her options to stop the harassment. The final incident occurred on April 21. Donat was working outside in her garden. Johnson stopped directly in front of Donat's home. Donat walked to her cellphone and unlocked it in case she needed to call 911. Johnson pulled up even closer to Donat, got out of his vehicle, and stood there for a moment. Johnson

---

3.     While this conduct was occurring, the Merchants did not know who was driving the white truck. However, at the hearing, the Merchants identified the white truck as belonging to Johnson. In addition, Mrs. Merchant wrote down the license number during one of the drive-bys, spoke with Donat about the incident, and the two confirmed the truck belonged to Johnson.

#27203

then re-entered his vehicle and left.  The next day, Donat filed for an ex parte temporary protection order.

[¶11.]     The circuit court granted the temporary protection order.  After hearing the evidence at a subsequent day-long hearing, the court entered findings of fact, conclusions of law, and an order granting a permanent protection order.

[¶12.]     Johnson raises six issues on appeal:

1.  Whether the circuit court's findings of fact are clearly erroneous.

2.  Whether the circuit court abused its discretion in granting the protection order.

3.  Whether Johnson's right to due process was violated.

4.  Whether the circuit court erred in admitting "other acts" evidence.

5.  Whether SDCL 22-19A-1, as applied in this case, is unconstitutionally vague.

6.  Whether the circuit court abused its discretion in preventing Johnson from accessing his home via the 1.5-mile, paved road.

*Standard of Review*

[¶13.]     We review protection orders using the same standard to review injunctions.  *White v. Bain*, 2008 S.D. 52, ¶ 8, 752 N.W.2d 203, 206 (per curiam) (quoting *Schaefer v. Liechti*, 2006 S.D. 19, ¶ 8, 711 N.W.2d 257, 260).  The review is a two-step process, reviewing the facts for clear error and the ultimate decision for an abuse of discretion.

> First, we determine whether the trial court's findings of fact were clearly erroneous.  We will not set aside the trial court's findings of fact unless, after reviewing all of the evidence, we are left with a definite and firm conviction that a mistake has been made.  Furthermore, the credibility of the witnesses, the import to be accorded their testimony, and the weight of the evidence

-5-

must be determined by the trial court, and we give due regard to the trial court's opportunity to observe the witnesses and examine the evidence. If the trial court's findings of fact are not clearly erroneous, we must then determine whether the trial court abused its discretion in granting or denying the protection order.

*Id.* (internal quotation marks omitted).

*Decision*

*1. Whether the circuit court's findings of fact are clearly erroneous.*

[¶14.] Johnson argues that some of the circuit court's findings of fact are clearly erroneous. After a daylong hearing, the court entered extensive findings, which included the historical facts outlining the nature and history of Donat and Johnson's relationship.[4] The court listened to conflicting testimony from both parties. After weighing the evidence, the circuit court found Donat's testimony and evidence more credible. "The credibility of witnesses and the weight afforded to their testimony is . . . within the discretion of the trial court." *Pietrzak v. Schroeder*, 2009 S.D. 1, ¶ 37, 759 N.W.2d 734, 743 (citing *Fuerstenberg v. Fuerstenberg*, 1999 S.D. 35, ¶ 22, 591 N.W.2d 798, 807).

[¶15.] Nevertheless, Johnson specifically contends the circuit court erred in finding that Johnson secured a building permit for his new lot on April 1, 2014. The permit was actually issued on February 24, 2014. Johnson argues the earlier date

---

4. In *Goeden v. Daum*, we indicated that in stalking cases circuit courts "should not be relaxed to the point of skipping a crucial element of a court trial involving contested facts." 2003 S.D. 91, ¶ 9, 668 N.W.2d 108, 111. Checking the box and saying "stalking ha[s] occurred under SDCL 22-19A" is not sufficient. *Id.* ¶ 8. Circuit courts "must [e]nsure that findings of fact and conclusions of law are clearly entered." *Id.* ¶ 9 (footnote omitted). The court in this case entered extensive findings of fact and conclusions of law as required.

shows a "legitimate purpose" for the additional trips. *See* SDCL 22-19A-4. However, regardless of the frequency of the trips over a given period of time, there was substantial evidence suggesting that Johnson drove by to harass Donat. The circuit court found Johnson would slow down, stop in front of Donat's home, and glare at her. Johnson's contention that he had a legitimate purpose for his conduct is based solely on his own testimony at the hearing, which the court rejected. It is for the circuit court to resolve conflicts in the testimony. *Ducheneaux v. Miller*, 488 N.W.2d 902, 916 (S.D. 1992). Although the court was mistaken regarding the date of the building permit, its finding regarding Johnson's purpose in driving by Donat's home was not clearly erroneous.

[¶16.] Johnson's contentions regarding the court's other findings are also without merit. Johnson contends that he did not slow down or stop at Donat's house and glare at her. He claims the Merchants never identified him or his vehicle, so it is impossible to determine who drove the white truck. Both of these contentions fail because they are based solely on Johnson's assertions. Donat produced substantial evidence supporting these findings. "'Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.'" *Zarecky v. Thompson*, 2001 S.D. 121, ¶ 11, 634 N.W.2d 311, 315 (quoting *First Nat'l Bank of Biwabik, Minn. v. Bank of Lemmon*, 535 N.W.2d 866, 869 (S.D. 1995)).

[¶17.] Johnson, however, objects to Donat's testimony as "self-serving." The "self-serving" objection is not valid in this context simply because a party who is also a witness has a manifest interest in the litigation. *See State v. Bergeron*, 452 N.W.2d 918, 926 (Minn. 1990) (explaining that "[t]he objection that testimony is

'self-serving' appears to be a variation on the objection that a defendant is incompetent to testify because of an "interest" or "bias" in the case[,]" an objection that is no longer valid under the modern rules of evidence). Indeed, under SDCL 19-14-1 (Rule 601), absent some exceptions not relevant here, "[e]very person is competent to be a witness." The rules of evidence now provide other methods by which an interested party's testimony may be questioned. *See Bergeron*, 452 N.W.2d at 926.

[¶18.] Ultimately, Johnson's arguments regarding the circuit court's findings are based solely on his version of the evidence. However, an appellant cannot show clear error based upon his "own testimony and version of the events and not the testimony of the [appellee] accepted by the trial court in entering its finding[s.] . . . Such a biased view of the record will not support a determination of clear error in a trial court's findings." *White*, 2008 S.D. 52, ¶ 12, 752 N.W.2d at 207. After reviewing all the evidence, we conclude the court's findings of fact were not clearly erroneous.

> 2. *Whether the circuit court abused its discretion in issuing the protection order.*

[¶19.] Johnson argues that the circuit court abused its discretion in issuing the protection order. Johnson points out that a finding of stalking is a prerequisite to the issuance of a protection order. *Id.* ¶ 7, 752 N.W.2d at 205 (citing SDCL 22-19A-11). Johnson contends that the circuit court abused its discretion because there was insufficient evidence to conclude his conduct met the statutory definition of "stalking" under SDCL 22-19A-1.

[¶20.]    Willful, malicious, and repeated conduct designed to harass another may constitute stalking. SDCL 22-19A-1(1).[5] "Harassment" is defined by SDCL 22-19A-4. "[H]arasses means a knowing and willful course of conduct directed at a specific person which seriously alarms, annoys, or harasses the person, and which serves no legitimate purpose." SDCL 22-19A-4. A "course of conduct" is "a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose." SDCL 22-19A-5.

[¶21.]    We have already determined that the circuit court's findings of fact were not clearly erroneous. In its conclusions of law, the circuit court concluded that there was "sufficient evidence to find that [Johnson] engaged in a knowing and willful course of conduct in the nature of his repeated travels and contacts with [Donat]." Further, Johnson's "conduct seriously alarmed, annoyed and harassed [Donat] with no legitimate purpose." Finally, Johnson "engaged in a pattern of conduct by a series of acts over a period of time that shows a continuing pattern of harassment[.]" Johnson, however, points out the circuit court did not specifically

---

5.    In its entirety, SDCL 22-19A-1 provides:
      No person may:

> (1) Willfully, maliciously, and repeatedly follow or harass another person;

> (2) Make a credible threat to another person with the intent to place that person in reasonable fear of death or great bodily injury; or

> (3) Willfully, maliciously, and repeatedly harass another person by means of any verbal, electronic, digital media, mechanical, telegraphic, or written communication.

A violation of this section constitutes the crime of stalking. Stalking is a Class 1 misdemeanor. However, any second or subsequent conviction occurring within ten years of a prior conviction under this section is a Class 6 felony.

mention that Johnson acted "maliciously." *See* SDCL 22-19A-1 ("No person may . . . [w]illfully, *maliciously*, *and* repeatedly follow or harass another person[.]") (Emphasis added.) Yet conduct that is intentionally "annoying" is equivalent to conduct that is "malicious." *See* SDCL 22-1-2(1)(a) ("The words, 'malice, maliciously,' and all derivatives thereof import a wish to intentionally vex, *annoy*, or injure another person, established either by proof or presumption of law[.]" (Emphasis added.)); *White*, 2008 S.D. 52, ¶ 13, 752 N.W.2d at 207. The circuit court concluded Johnson's intentional "conduct seriously alarmed, *annoyed* and harassed [Donat.]" Thus, when the circuit court's conclusions are read as a whole, the malice element was satisfied. The court found that Johnson engaged in willful course of conduct designed to harass and annoy Donat that served no legitimate purpose. The circuit court did not abuse its discretion in entering a protection order against Johnson.

                *3.      Whether Johnson's right to due process was violated.*

[¶22.]      Johnson argues that the circuit court improperly admitted evidence "in regards to issues not alleged in the petition." Therefore, Johnson contends that the pleadings did not give Johnson the notice that due process requires.

[¶23.]      SDCL 22-19A-8 requires, among other things, that a petition alleging stalking must be accompanied by "an affidavit made under oath stating the specific facts and circumstances of the stalking[.]" SDCL 22-19A-8.[6] Donat filled out a

---

6.    SDCL 22-19A-8 provides in full:

        There exists an action known as a petition for a protection order
        in cases of stalking, in cases of physical injury as a result of an
                           (continued . . .)

standard-form petition and affidavit. These documents contained specific facts and circumstances of Johnson's conduct, including many of the facts later adopted by the circuit court. Further, under modern pleading rules, the initial pleading need only set "forth the ultimate facts constituting the cause of action, not the evidence by which plaintiff proposes to prove those facts." *Carlsen v. Koivumaki*, 174 Cal. Rptr. 3d 339, 358 (Cal. Ct. App. 2014) (internal quotation mark omitted) (quoting *Comm. on Children's Television, Inc. v. Gen. Foods Corp.*, 673 P.2d 660, 669 (Cal. 1983) (en banc) (superseded on other grounds)). Donat also answered Johnson's interrogatories identifying her potential witnesses, and Johnson did not move the court for a continuance or a discovery order. Johnson received the notice that due process requires.

---

(. . . continued)

assault, or in cases of a crime of violence as defined in subdivision 22-1-2(9). Procedures for the action are as follows:

(1) A petition under this section may be made against any person who violates § 22-19A-1 or against any other person against whom stalking or physical injury as a result of an assault or in cases where a crime of violence is alleged;

(2) A petition shall allege the existence of (a) stalking or (b) physical injury as a result of an assault or (c) a crime of violence, and shall be accompanied by an affidavit made under oath stating the specific facts and circumstances of the stalking or the physical injury as a result of an assault or crime of violence;

(3) A petition for relief may be made whether or not there is a pending lawsuit, complaint, petition, or other action between the parties.

The clerk of the circuit court shall make available standard petition forms with instructions for completion to be used by a petitioner. The attorney general shall prepare the standard petition form.

>  *4. Whether the circuit court erred in admitting "other acts" evidence.*

[¶24.]    Johnson argues that the circuit court abused its discretion in allowing evidence of Johnson and Donat's prior relationship and Johnson's criminal record. Johnson believes the incidents that occurred prior to December 2013 are irrelevant "other acts" not "reasonably related" to the alleged stalking. *See Darrow v. Schumacher*, 495 N.W.2d 511, 521 (S.D. 1993) (quoting *State v. Lodermeier*, 481 N.W.2d 614, 625 (S.D. 1992)) ("[A] prior act must be 'reasonably related to the offending conduct.'"). "This Court reviews a decision to admit or deny evidence under the abuse of discretion standard." *Ferebee v. Hobart*, 2009 S.D. 102, ¶ 12, 776 N.W.2d 58, 62.

[¶25.]    We first observe that the history between Johnson and Donat was not other acts evidence. It was not introduced to prove Johnson's character. *See* SDCL 19-12-4 (Rule 404(a)); SDCL 19-12-5 (Rule 404(b)); *State v. Boe*, 2014 S.D. 29, ¶ 20, 847 N.W.2d 315, 320 ("Only when other act evidence is offered to prove character is the evidence inadmissible."). Instead, it was part of the offense itself because stalking requires proof of a "course of conduct," which is "a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose." *See* SDCL 22-19A-5. "[W]hile an act or a preliminary set of acts might not rise to the level of harassment because it does not show a sufficient pattern of conduct, as additional alarming or annoying acts are committed, a more complete pattern of conduct may be established and the line between mere annoyance and legal harassment may be crossed." *White*, 2008 S.D. 52, ¶ 12, 752 N.W.2d at 207. Here, the circuit court specifically found that Johnson's previous

conduct "contributed to Donat's sense of alarm, annoyance and harassment." Thus, Johnson and Donat's history was not "other acts" evidence. It was evidence of the course of conduct element. But even if it was other act evidence, it was relevant to prove issues other than character. Many of the alleged "other acts" were relevant to prove Johnson's motive, intent, plan, knowledge, and absence of mistake or accident in stalking Donat. *See* SDCL 19-12-5 (Rule 404(b)) (providing that other acts evidence may be admitted to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident"). The parties' prior history was also relevant to determine the appropriate remedy. "Admitting prior acts of abuse aids in assessing the need for immediate and future protection." *Coburn v. Coburn*, 674 A.2d 951, 958 (Md. 1996). The circuit court did not abuse its discretion in allowing evidence of Johnson and Donat's relationship and prior history.

[¶26.] Johnson also contends that the circuit court abused its discretion in allowing evidence of Johnson's criminal record and some other acts that were not reasonably related to the stalking conduct. In his testimony, Johnson claimed at trial that he was nonviolent, sober, and a safe driver. Donat sought to impeach Johnson with an instance of simple assault from 1995,[7] DUI arrests and a conviction,[8] speeding tickets,[9] an act of vandalism from high school,[10] and urinating

---

7. Johnson did not object to the introduction of this evidence at the hearing.

8. Johnson objected to the introduction of his DUI arrests and the court sustained his objection.

9. The circuit court sustained Johnson's objection to this line of questioning.

10. Johnson objected to this question, and the circuit court indicated that it did not consider this twenty-year-old conduct to be relevant. No further questions were asked on the high school vandalism incident.

in public. While some of those acts were relevant to rebut Johnson's claims, we agree that some of the acts were too attenuated to prove stalking or rebut Johnson's testimony. However, Johnson either failed to object, the circuit court sustained his objections (and no more testimony was heard on the subject), or the court did not consider the objectionable evidence. Therefore, Johnson has not demonstrated error or prejudice. *See Boe*, 2014 S.D. 29, ¶ 20, 847 N.W.2d at 320 ("[Defendant] bears the burden of proving that the court abused its discretion when it admitted this evidence, and that the admission was unfairly prejudicial."). Thus, the circuit court did not abuse its discretion.

> 5. *Whether SDCL 22-19A-1, as applied in this case, is unconstitutionally vague.*

[¶27.] Johnson argues that SDCL 22-19A-1 is unconstitutionally vague. "As a general rule, a void for vagueness review is limited to the specific facts of the case." *State v. Asmussen*, 2003 S.D. 102, ¶ 10, 668 N.W.2d 725, 731. "The standard for a void for vagueness claim in violation of due process is whether 'the prohibited act or omission is expressed in terms so vague that reasonable people of ordinary intelligence might apply it differently[.]'" *Id.* (quoting *In re of Reif*, 478 N.W.2d 815, 818 (S.D. 1991)). If the statute is not sufficiently "defined with definiteness and certainty[,]" *id.* (quoting *State v. Big Head*, 363 N.W.2d 556, 559 (S.D. 1985)), we will declare it void for vagueness. *Id.*

[¶28.] Johnson acknowledges we have held that SDCL 22-19A-1 is not unconstitutionally vague. *Id.* ¶ 18, 668 N.W.2d at 734. Johnson, however, argues that SDCL 22-19A-1 does not utilize a reasonable person standard. Johnson contends that without such a standard, "an individual cannot determine which

conduct is against the law. The conduct may or may not fall within the criminal prohibition depending on the reaction or sensibilities of the victim. The subjective standard does not give fair notice if conduct is forbidden and can lead to discriminatory enforcement." *See id.* ¶ 13, 668 N.W.2d at 733. *Asmussen*, however, determined that the lack of a reasonable person standard did not automatically render the stalking protection-order statute unconstitutionally vague. *See id.* ¶¶ 14-18, 668 N.W.2d at 733-34. Instead, a defendant "must demonstrate that the statute as it applied to the facts of his case was so vague that it did not 'give a person of ordinary intelligence fair notice that his contemplated conduct [was] forbidden.'" *Id.* ¶ 16, 668 N.W.2d at 733 (quoting *Big Head*, 363 N.W.2d at 559).

[¶29.] Here, the circuit court found that Johnson willfully engaged in harassing and annoying conduct over the course of several years. Johnson and Donat's relationship and history provide the context with which we examine the harassment. Johnson insulted, disparaged, and assaulted Donat. He made an unwanted sexual advance on her, drove by and stopped at her house to glare at her on numerous occasions, and even alarmed Donat's neighbors because of his conduct. Donat filed for a protection order after the last incident when Johnson stopped in front of Donat's house while she was gardening, stared at her, drove up closer, exited the vehicle, paused, and then drove away.

[¶30.] Under the foregoing facts, Johnson knew or should have known that his willful and harassing conduct was forbidden. "We cannot say that [Johnson's] conduct falls within the ambit of constitutional protection or, based upon the facts of this case, that [SDCL 22-19A-1(1)] is unconstitutionally vague." *See id.* ¶ 18, 668 N.W.2d at 734.

*6.     Whether the circuit court abused its discretion in preventing Johnson from accessing his home via the 1.5-mile, paved road.*

[¶31.]     Johnson argues that the circuit court abused its discretion in ordering Johnson to stay at least 100 feet from Donat. Johnson points out that the order prevents him from: accessing his home via the 1.5-mile, paved road; performing his plowing contract with the subdivision; and attending his daughter's school events.

[¶32.]     The circuit court considered the arguments Johnson now makes when it fashioned the protection order. "'[A] trial court has broad discretion in fashioning an equitable remedy.'" *Gartner v. Temple*, 2014 S.D. 74, ¶ 23, 855 N.W.2d 846, 854 (quoting *Lien v. Lien*, 2004 S.D. 8, ¶ 27 n.3, 674 N.W.2d 816, 825 n.3). Johnson does not cite any authority that the conditions imposed exceed the court's discretionary power. The court obviously believed the proximity restriction was necessary because many of the stalking incidents occurred while Johnson drove slowly past or stopped in front of Donat's home on the road that is at issue. The court did not abuse its discretion in ordering Johnson to stay at least 100 feet from Donat.

*Conclusion*

[¶33.]     The circuit court did not clearly err or abuse its discretion in issuing the protection order. Johnson's claimed constitutional violation is without merit. We affirm.

[¶34.]     GILBERTSON, Chief Justice, and SEVERSON, WILBUR, and KERN, Justices, concur.