#27819, #27820-a-GAS
**2017 S.D. 37**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

#27819

ABIGAIL JEANNINE PARKER,                    Petitioner and Appellee,

v.

JORDAN ZACHARY PARKER                    Respondent and Appellant.

#27820

ABIGAIL JEANNINE PARKER,                    Petitioner and Appellee,

v.

JASMYN LEIGH BAUER,                    Respondent and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE JOHN PEKAS
Judge

\* \* \* \*

CONSIDERED ON BRIEFS
ON FEBRUARY 13, 2017
OPINION FILED 06/21/17

GREGORY T. BREWERS of
Strange, Farrell, Johnson
 & Brewers, PC
Sioux Falls, South Dakota

Attorneys for petitioner
and appellee.


VICTORIA M. DUEHR of
Bangs, McCullen, Butler,
 Foye & Simmons, LLP
Sioux Falls, South Dakota

Attorneys for respondents
and appellants.

SEVERSON, Justice

[¶1.]        Abigail Parker sought protection orders against her husband Jordan

Parker and Jordan's sister, Jasmyn Bauer.  After a combined hearing on both

matters, the circuit court granted protection orders for Abigail against both Jordan

and Jasmyn.  Jordan and Jasmyn appeal.

## Background

[¶2.]        Abigail and Jordan married in 2010; they legally separated in

September 2014.  Their separation agreement contains a clause wherein they both

agreed not to harass each other.  Due to religious considerations, they did not obtain

a divorce.  They have not resided together since fall 2014.  They have two children

together; Abigail also has another child.  Abigail sought protection orders after an

incident in November 2015.  A two-day hearing on her petitions for protection

orders was held in March 2016.

[¶3.]        Abigail testified that on the night of November 7, 2015, she and a male

friend were going to dinner at Tailgator's in Brandon, South Dakota.  She was

driving, and her friend was a passenger in the car.  She pulled her vehicle into the

parking lot of the restaurant and parked.  She immediately realized that she was in

a spot dedicated for compact cars.  She intended to move the car to a different spot,

but another car had already pulled up behind her and blocked her from moving her

car.  Jordan exited the car that was blocking her vehicle.  He came up to the window

of Abigail's car, swore at her and her friend, and told her friend he would "rip [the

friend's] face off."  After the exchange, Jordan got in his car and left.

[¶4.] Abigail and her friend returned to Abigail's apartment. They were still in the apartment parking lot, sitting in her vehicle, when Jasmyn, Jordan's sister, arrived. Jasmyn approached Abigail's vehicle and confronted Abigail. Jordan also came to the apartment and parked his vehicle in the apartment parking lot. When Jordan exited his vehicle and walked up to Abigail's vehicle, Abigail called the police. As soon as Abigail ended the phone call with the police, both Jasmyn and Jordan left.

[¶5.] Abigail testified to other incidents where Jordan had alarmed her. Those incidents included arriving at events that she attended, even though he was not invited and had not been told where she would be, and once gaining access to her secured building and showing up at her door uninvited. She also testified that he helped care for the children when she was sick in April 2015, and that she woke up to him having sex with her. She also testified that one Sunday after a church service, he rummaged through her car and confronted her about a pack of cigarettes that she had concealed in a compartment of the car. And she believed that Jordan had attempted to take pictures of her on several occasions and accessed information and pictures on her phone.

[¶6.] As for Abigail's relationship with Jasmyn, Abigail testified that Jasmyn previously caused her alarm. She testified that Jasmyn called her in the past. Abigail testified that she did not answer; instead she let the calls go to voicemail. According to Abigail, Jasmyn left voicemails in which she called Abigail a liar and said that Abigail needed to take care of her kids and that if Jasmyn

caught Abigail driving drunk with "her girls" in the car again, Jasmyn would "call her in." Jasmyn denied all but a couple phone calls to Abigail over the years.

[¶7.] After the hearing, the court orally made findings of fact. It granted protection orders in favor of Abigail against both Jordan and Jasmyn. Jordan and Jasmyn appeal; they allege that the court made clearly erroneous factual findings and abused its discretion by issuing the protection order.

## Standard of Review

[¶8.] We review protection orders with a two-step process. *See Donat v. Johnson*, 2015 S.D. 16, ¶ 13, 862 N.W.2d 122, 127. "First, we determine whether the trial court's findings of fact were clearly erroneous. . . . If the trial court's findings are not clearly erroneous, we must then determine whether the trial court abused its discretion in granting or denying the protection order." *Id. (*quoting *White v. Bain*, 2008 S.D. 52, ¶ 8, 752 N.W.2d 203, 206).

## Analysis

[¶9.] First, we consider the protection order against Jordan. Abigail's petition for a protection order against Jordan indicated that she sought a protection order for both domestic abuse and stalking. She checked boxes indicating that Jordan made her fearful that he is about to cause her physical harm or bodily injury; that he willfully, maliciously, and repeatedly followed her; and that he harassed her by pursuing a knowing and willful course of conduct which seriously alarmed, annoyed, or harassed her, with no legitimate purpose; and that the pattern of conduct was a series of acts over a period of time, however short, showing

a continuing pattern of harassment. The court granted a protection order on the grounds of domestic abuse.

[¶10.] Jordan maintains that the court erred by granting a protection order for domestic abuse because the court failed to mention the words "domestic abuse" in its oral findings and conclusions and that the court actually issued the order under SDCL chapter 22-19A, which prohibits stalking. However, domestic abuse includes a violation of chapter 22-19A, if the stalking is between persons in certain relationships. *See Trumm v. Cleaver*, 2013 S.D. 85, ¶ 12, 841 N.W.2d 22, 25. SDCL 25-10-1(1) defines domestic abuse as:

> physical harm, bodily injury, or attempts to cause physical harm or bodily injury, or the infliction of fear of imminent physical harm or bodily injury when occurring between persons in a relationship described in § 25-10-3.1. *Any violation of* § 25-10-13 *or chapter 22-19A* or any crime of violence as defined in subdivision 22-1-2(9) *constitutes domestic abuse if the underlying criminal act is committed between persons in such a relationship*[.]

(Emphasis added.). Here, as the court found and no party disputes, Abigail and Jordan were in a relationship that satisfies SDCL 25-10-3.1.∗ Therefore, the court

---

∗ SDCL 25-10-3.1 provides:
> Any person who is involved in one of the following relationships with another party:
>
>> (1) Spouse or former spouse;
>>
>> (2) Is in a significant romantic relationship;
>>
>> (3) Has a child or is expecting a child with the abusing party;
>>
>> (4) Parent and child, including a relationship by adoption, guardianship, or marriage; or
>>
>> (5) Siblings, whether of the whole or half blood, including a relationship through adoption or marriage;

(continued . . .)

could properly issue a domestic abuse protection order if Jordan had caused "physical harm, bodily injury, or attempt[ed] to cause physical harm or bodily injury, or the infliction of fear of imminent physical harm or bodily injury" or if it found that Jordan stalked Abigail in violation of chapter 22-19A.

[¶11.]    At the end of the hearing, the court orally issued its decision. Although the court's oral findings somewhat rambled, it found the elements of stalking. The court determined that "block[ing of] a person's vehicle from extricating themselves from a situation . . . is harassment." It also determined that a threat of "ripping [the] face off" of Abigail's passenger was harassment and that watching Jasmyn confront Abigail was "furtherance" of harassment. SDCL 22-19A-1 states in relevant part: "No person may (1) Willfully, maliciously, and repeatedly follow or harass another person[.]" Furthermore, SDCL 22-19A-4 defines "harasses" as a "knowing and willful course of conduct directed at a specific person which seriously alarms, annoys, or harasses the person, and which serves no legitimate purpose." "Course of conduct" is also defined in SDCL 22-19A-5 as "a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose. Constitutionally protected activity is not included within the meaning of course of conduct." Here, although the court did not use the statutory language when issuing its findings of fact, those findings nonetheless support that Jordan knowingly and willfully engaged in a series of acts that repeatedly harassed Abigail.

_____

(. . . continued)
        is entitled to apply for a protection order or a temporary
        protection order pursuant to the provisions of this chapter.

[¶12.]     The parties expressly ask that we determine the credibility of the witnesses and determine whether they introduced sufficient evidence to support the court's decision. We decline to reweigh the evidence because that is within the province of the circuit court, which we only review to determine whether the court's findings are clearly erroneous. "[T]he credibility of the witnesses, the import to be accorded their testimony, and the weight of the evidence must be determined by the trial court[.]" *Donat*, 2015 S.D. 16, ¶ 13, 862 N.W.2d at 127 *(*quoting *White*, 2008 S.D. 52, ¶ 8, 752 N.W.2d at 206).

[¶13.]     Next we consider the protection order entered against Jasmyn. As background, the court referred to the history and pattern of animosity between Jasmyn and Abigail, and it made findings regarding the acts committed on the night that Jasmyn confronted Abigail in the parking lot of Abigail's apartment building. After the incident with Jordan at the restaurant, Abigail and her friend returned to her apartment complex and sat in Abigail's car in the parking lot. The court determined that Jasmyn drove to the apartment building at the request of Jordan and attempted to block Abigail's vehicle from pulling out. The court viewed "impeding a vehicle from extricating itself or being able to be pulled out" as harassment. Those findings sufficiently support that Jasmyn knowingly and willfully engaged in a series of acts through her own actions and those in conjunction with her brother's actions, that repeatedly harassed Abigail. Accordingly, the court's findings support the issuance of the protection order.

*Attorneys' Fees*

[¶14.]	Each of the parties has requested attorneys' fees pursuant to SDCL 15-26A-87.3.  However, they have not cited authority indicating that attorneys' fees are permitted in these cases.  They cite to SDCL 15-17-38 as the relevant statute, which provides in relevant part, "The court, if appropriate, in the interests of justice, may award payment of attorneys' fees in all cases of divorce, annulment of marriage, determination of paternity, custody, visitation, separate maintenance, support, or alimony."  This case is not within any of those enumerated cases.  We deny each of their requests.

## Conclusion

[¶15.]	The circuit court's findings of fact sufficiently support the issuance of protection orders in favor of Abigail against both Jordan and Jasmyn.  We affirm.

[¶16.]	GILBERTSON, Chief Justice, and ZINTER and KERN, Justices, and WILBUR, Retired Justice, concur.